## STATE, EX REL BLYDENBURG, v. BURDICK, SECRETARY OF STATE.

ELECTIONS — NOMINATIONS FOR PRESIDENTIAL ELECTORS — CERTIFICATE OF SECRETARY OF STATE TO THE COUNTY CLERKS— OFFICIAL BALLOT — JOINING IN THE NOMINATION OF MORE THAN ONE PERSON FOR THE SAME OFFICE — STATUTORY CONSTRUCTION — PARTY DESIGNATION IN ELECTOR'S CERTIFICATE OF NOMINATIONS.

1. As nominations for the office of presidential electors are required to be filed with the Secretary of State, and the candidates for that office presented in one certificate of nomination are entitled to be arranged upon the official ballot in a separate group, and the secretary is required to certify such nominations to the several county clerks whose duty it is to prepare the official ballots ; and as the county clerk can have no other source of official information than the contents of the secretary's certificate ; it is the duty of the secretary to so certify the names of such candidates and their description as will convey to the clerk all requisite knowledge necessary to enable him to properly prepare the ballot as provided by law.

2. That duty of the secretary is not required to be performed by the method only of placing in his certificate, the candi-

dates in groups as they are entitled to appear on the ballot, as it is practicable to convey the necessary information in other ways.

3.  The law does not contemplate the printing of the name of one person as candidate for presidential elector in more than one place upon the ballot, although such person may have been nominated for that office by two or more political parties.

4.  Where a person was nominated as one of three candidates for presidential elector by one party, and had not declined that nomination, but was afterward also nominated by another party for the same office to fill a vacancy; his name being entitled to but one place upon the ballot, and no one having the right to ignore his first nomination, it follows that his name is not imperatively required to be also printed in the same group with the other candidates of the party giving him the second nomination.

5.  The matter of the arrangement of the ballots has been left to the discretion of the county clerks, which, unless the statute is departed from, is not subject to judicial control.

6.  Had some one, not already a candidate, been nominated to fill the vacancy occurring by the declination of one of three nominees for presidential electors, the name of the candidate so selected would be entitled to a place upon the ballot in the same group with the original associates of the one who had declined.

7.  The provision contained in Section 89, of Chapter 80, of the Laws of 1890, that no person shall join in nominating more than one person for the same office, is prohibitory only of the same person joining in a certificate of nomination by electors of more than one person for the same office; and the fact that a person has joined in nominating one person as a candidate for office by participating in the primaries of a political party, does not render him incompetent to sign a certificate of nomination by electors of another person for the same office.

8.  A vacancy occurring in nominations made by certificate of electors may be filled in the same manner as the original nominations were made.

9.  If there is any doubt about the meaning and effect of the statute regulating nominations of candidates for public office, that construction should be adopted which will accord to the citizen the greater liberty in casting his ballot.

10. Under the statutes existing in 1896, where a certificate of electors was signed, sworn to, and presented by the state chairman of a political party, and alleged in its body that the signers represented such party, and there were no other existing nominations by such party for the same office, and the name of that party was designated in the certificate as the party represented by the candidates therein nominated, the Secretary of State, with whom the certificate was filed, was not required to add to, or qualify, the party name thus used, in certifying the nominations to the several county clerks, so that it would appear that the candidates were nominated by electors' certificate.

[Decided October 20, 1896.]

ORIGINAL action in mandamus.

The relator applied for the writ of mandamus to compel Charles W. Burdick, Secretary of State, to change the form and method adopted by him in certifying to the several county clerks the candidates nominated for presidential electors. The facts are stated in the opinion.

*Walter R. Stoll,* for relator.

*Lacey & Van Devanter,* for respondent.

POTTER, JUSTICE.

The relator, chairman of the Democratic State Central Committee, brings the present action seeking thereby the allowance of a writ of mandamus to compel the Secretary of State to rescind or modify the form or character of his certificates to the several county clerks respecting the candidates for electors of president and vice-president of the United States. The respondent certified such nominations in the following manner, and order; the names of three candidates of the Republican party, simply naming them with the word "Republican" following each of their names; the names of Patrick J. M. Jordan, John Sims, and Daniel L. Van Meter, with the word "People's" accompanying the names of Jordan and Sims, and the words "Democrat and People's" following the name of

Van Meter; the names of three Prohibition candidates, and lastly, the names of John A. Martin and Patrick J. Quealy with the word "Democrat" following each of their names.

The petition discloses that at the regular Democratic State convention George H. Cross, John A. Martin, and Patrick J. Quealy were nominated for presidential electors, and at the regular State convention of the People's party, Francis M. Matthews, Charles H. Randall, and Daniel L. Van Meter were nominated for such office; all of these nominations were duly certified with the respondent by the respective chairmen and secretaries of such conventions; that within the time allowed by the statute, Cross, one of the democratic nominees, and Randall and Matthews, two of the nominees of the People's party, duly declined; that in pursuance of the authority expressly conferred upon it by the convention making the original nominations, the State committee of the Democratic party filled the vacancy caused by the declination of Cross by the nomination of Daniel L. Van Meter; that neither any convention or committee of the People's party attempted to fill the vacancy occasioned by the declinations of Matthews and Randall, nor took any action concerning the matter, and that the People's party convention had not empowered its State committee to fill such or any vacancies. It further appears that on the 8th day of October one John W. Patterson, who had been appointed by the said convention of the People's party as the chairman of the State committee of that party, delivered to the respondent a certificate of nomination purporting to nominate for the office of presidential electors to fill the vacancy in the list of People's party candidates caused by the declination of Matthews and Randall, respectively, Patrick J. M. Jordan and John Sims ; it appearing from the record that in the body of such certificate it was recited that "the undersigned and the said Patrick J. M. Jordan and the said John Sims so nominated to fill such vacancies represent the People's party ; " and that the same was

verified by said John W. Patterson who made oath that the statements contained in the certificate were true, and described himself in his affidavit as the chairman of the State committee of the People's party. The said certificate was signed by one hundred electors, including said Patterson. The relator, in his petition, charges that this certificate of nomination was void. The allegations to support such charge, summarized, are to the effect that the nominations mentioned therein were not made by the People's party ; that the laws of this State contemplate and expressly require that vacancies occurring in the ticket of any political party nominated in regular convention shall be filled only by the convention itself or by the party committee duly authorized ; that the certificate was not filed within the time required for original nominations; and that no number of electors can supplant or supercede the action of an organized political party; and the electors whose names are subscribed to the certificate in question were not authorized to represent the People's party or act in its behalf. It was also averred that a large number of the persons whose names were signed to the certificate had joined in nominating at least three other candidates for the same office by attending and participating in the primaries of the Republican party. This last-mentioned allegation is general in character; it is neither stated when they so attended and participated, or in what the participation consisted, nor are the particular individuals referred to indicated.

The petition avers that the certificate of the respondent is illegal and wrong in two respects: first, in failing to certify the name of Daniel L. Van Meter in the same group and in conjunction with the names of Martin and Quealy, the other democratic candidates; and, second, in including the names of Jordan and Sims in the group of the candidates for electors of the People's party. The prayer of the petition is that a writ of mandamus issue directing the respondent to rescind his certificate and to issue therefor new ones placing the name of Van Meter in

the group of democratic candidates, and omitting the names of Jordan and Sims from the group of the candidates of the People's party, or requiring him to so modify his certificates already sent out that the same result may be accomplished.

The case was heard upon the petition and the various certificates of nominations for the office of presidential electors filed in the office of respondent. From the record outside of the petition it appeared that on the 25th day of September, several days before the chairman and secretary of the convention of the People's party filed their certificate of the nominations made by that party at its said convention, a certificate of nomination signed by one hundred electors representing themselves as members of the People's party was filed, making original nominations of candidates for electors to represent the principles of the People's party, naming as the nominees thereof the same persons who were nominated at the State convention of that party; viz., Matthews, Randall, and Van Meter.

The duty of the secretary of State with respect to the certification of nominations filed in his office is defined by the provisions of Section 93 of Chapter 80 of the Laws of 1890, as follows:

" Not less than twenty-five nor more than thirty days before an election to fill any public office, the secretary of Wyoming shall certify to the county clerk of each county within which any of the electors may by law vote for candidates for such office, the names and description of each person nominated for such office as specified in the certificate of nomination with the said secretary."

If the respondent has complied with this duty, then the writ prayed for should not be allowed. It is contended that he has failed to perform the duty in the two particulars already mentioned. Upon the hearing, although it was not conceded by counsel for relator that the names of Jordan and Sims were entitled to be certified in any manner whatever, the chief contention seemed to be narrowed

to the proposition that they were not properly certified as People's candidates, and in one group with Van Meter, but that if certified at all, some word such as "Independent" or "Electors" should be used to indicate that they were nominated by certificate of electors. The argument respecting the grouping of the democratic nominees, and including therein the name of Van Meter in the certificate of the secretary, was based upon the requirements concerning the official ballot. Section 104 of Chapter 80 of the Laws of 1890 provides that "All ballots prepared under the provisions of this act shall be white in color and of a good quality of paper, and the names shall be printed thereon in black ink. Every ballot shall contain the name of every candidate whose nomination for any office specified in the ballot has been certified or filed according to the provisions of this act and no other name. The names of candidates for each office shall be arranged under the designation of the office in alphabetical order according to surnames, except that the names of electors of president and vice-president of the United States presented in one certificate of nomination, shall be arranged in a separate group. Every ballot shall also contain the name of the party or principle which the candidates represent as contained in the certificate of nomination. At the end of the list of candidates for each office shall be left a blank space large enough to contain as many written names of candidates as are necessary to fill such office. And on the ballot may be printed such words as will aid the voter to vote, as 'Vote for one,' 'Vote for two,' 'Vote for three,' 'Yes,' 'No,' and the like."

It is not required of the secretary that he prepare the official ballots; with this he has nothing whatever to do. That duty resides with the county clerk of each county. Under our system of voting, the elector is required to place a cross opposite the name of each candidate for whom he desires to vote; and, although the names of candidates for electors presented in one certificate of

nomination are required to be arranged upon the ballot in a separate group, one cross will not suffice to vote for the three or for the group thus arranged, but the voter, if desiring to vote for three, as he may do, is required to place a cross opposite the name of each one of the three.

At the time of orally announcing the conclusion of the court it was stated that the secretary was not required to group the candidates for electors at all, and that if he did so, his arrangement into groups was not binding or conclusive upon the officers charged with the duty of preparing the ballots. This statement was made in view of the rather meager provisions affecting the duty of the secretary, and the nature of a mandamus proceeding; and it seemed that unless it was clearly the duty of the respondent to group the candidates, he ought not to be directed by a writ of mandamus to do so. The statute does not expressly require that he shall certify such candidates in the manner in which they are required to be arranged upon the ballot; and so far as the name of Van Meter is concerned that is the extent of the prayer of relator; but we are somewhat apprehensive that a misunderstanding of the views of the court may arise from what was said when its conclusion was announced, without some further explanation. While it is true as above suggested that there is no express provision requiring the secretary to do more than certify the names and description of each person nominated, as specified in the certificate of nomination, it is likewise true that those candidates for presidential electors presented in one certificate of nomination are entitled to be arranged upon the official ballot in a separate group, and that the officer charged with the duty of thus arranging them can have no other source of official information than the contents of the certificate of the secretary. It would therefore seem reasonably clear, that in the performance of the duty devolving upon the secretary he should so certify the names of such candidates and their description, as will convey to the county clerk all

requisite knowledge. The relator and his counsel assumed that this could only be accomplished by the proper grouping of the candidates in the certificate of the secretary.

We are not, however, prepared to assent to that view. If the information sufficient for the appropriate performance of the duty of the county clerk can be given in other ways than by grouping, and we apprehend that may be practicable, then it would be erroneous to say, in the absence of an express requirement to that effect that the secretary is under official obligation to place the candidates in groups, as they are entitled to appear on the ballot, and by this method alone to certify the necessary information to the county clerks. The alternative writ commanded the respondent to thus group the names or show cause to the contrary. In case the writ should be made peremptory the same command would continue, notwithstanding the duty to afford proper information could as well and perhaps even better, without tresspassing upon the discretion of the county clerks, be capable of performance in another manner. The soundness of the contention of the relator, moreover, depends upon the correctness of his theory that the name of Van Meter should appear upon the ballot in a group to be comprised of his name and the other two democratic nominees. If that is not a right to which he is entitled then assuredly the respondent is not required to certify his name in such a group in any event, and we will not rest our conclusion entirely upon the fact that the respondent might employ different methods, but will inquire into the proposition thus insisted upon by the relator. It is manifest that the issues in this case do not directly involve the preparation of the ballot, but that matter bears a close relation to the obligations imposed upon the secretary, and as affecting his duties it may very properly be considered.

It was decided by this court in the case of Sawin v. Pease, 6 Wyo. (42 Pac., 750), that as to any office other than elector for president and vice-president a candidate nominated by more than one party for the same office was

not entitled to have his name appear upon the ballot more than once, and we can see no reason for departing from that rule. The opinion in that case out of abundant caution expressly stated that whether or not a different rule would apply as to presidential electors was not decided. The reason for the principle adopted in Sawin v. Pease arose out of our system of ballots and voting; the requirement that a cross must be placed opposite the name of each candidate for whom the elector desired to vote; the impossibility of voting a straight ticket, or for any number or group of candidates representing the same party or principle, by a single mark or cross; and, as a consequence, the probability of mistake and confusion should the name of any candidate be printed in more than one place as a candidate for the same office. Are those reasons, and is the rule deduced therefrom in the case of other offices, inapplicable to the office of presidential elector? The one difference existing in the law between that and other offices, is that the names of those candidates for presidential electors presented in one certificate of nomination shall be arranged upon the ballot in a separate group. In view of the further provision of law affecting alike all candidates upon the ballot that one cross votes for but one individual, and that the name of the presidential nominee nowhere appears on the ballot, we are unable to distinguish the case of such candidates from that of candidates for any other office in the respect under consideration. Otherwise any person or group of persons nominated by more than one party would be entitled to as many places upon the ballot corresponding with the number of parties nominating them, or certificates lawfully filed of such nominations. The same group of three persons might be presented by several parties, and the entire group be given as many places upon the official ballot. Such a result could only cause much confusion, and throw doubt upon the correctness of the returns of the votes cast. We are clearly of the opinion that the law does not contemplate the printing of the name of one

person as candidate for elector of president and vice-president in more than one place upon the ballot. Daniel L. Van Meter was regularly nominated by the People's party, and the certificate thereof duly filed. He has not declined that nomination. There is certainly no authority to remove his name from the People's party group. His nomination by that party was made long prior to its adoption by the Democratic party. His name being entitled to but one place upon the ballot, and no one possessing the right to ignore his first nomination in the preparation of the ballot, it necessarily follows that his name is not imperatively required to be also printed in the same group and in conjunction with the other democratic candidates. He is described as Democrat as well as People's, and this description indicates to the voter that he has been nominated as representing both parties. An arrangement of the ballot in which all appropriate groups could be maintained, and yet the name of Van Meter immediately precede or follow the names of the other democratic candidates, thus bringing the three into closer proximity, would certainly not violate the letter or the spirit of the law; but that matter has been left to the discretion of the county clerks, which, unless the statute is departed from, is not subject to the control of the courts. These views find support in State v. Allen (Neb.), 62 N. W., 35, and Miller v. Pennoyer, 23 Ore., 364. Had some one not already a candidate of another party been nominated to fill the vacancy caused by the declination of George H. Cross, the name of such nominee would be entitled to a place in the same group with the original associates of Cross; a reasonable construction of the statutory provision would clearly require the name of one thus substituted to be given the same place upon the ballot that the name of the candidate who had declined would have been entitled to.

The next question submitted involves the status of the nominations of Jordan and Sims. One ground of objection is that a large number of the persons purporting to

sign the certificate of nomination had joined in nominating at least three other persons for the same office by attending and participating in the primaries of the Republican party. Independent of the very general character of the allegation, we are of the opinion that the provisions of the statute (Sec. 89, Chap. 80, Laws 1890) attempted to be thus invoked, is prohibitory only of the same person joining in a certificate of nomination by electors of more than one person for the same office. The last part of the clause containing the provision referred to provides that if any person does so join, his name shall not be counted upon either certificate, and the context clearly indicates that it was only intended to forbid one from joining in more than one elector's certificate making a nomination for the same office. Whether any one shall have so joined can then be easily ascertained by the officer with whom the certificates are required to be filed. It is, however, contended that one hundred electors can not supplant a regularly organized political party, and are not authorized to place in nomination any candidate as representative of such a party. The position taken is that a party nomination is permitted to be made only by a party convention. Counsel for relator stated upon the hearing that they were until that time unaware that the People's nominees had first or at any time been nominated by an elector's certificate; and it was conceded by such counsel that if a vacancy occurs in the nominations made by such an elector's certificate, it might be filled in the same manner. The papers upon which the cause was submitted conclusively show that one hundred electors had nominated by certificate in due form said Randall, Matthews, and Van Meter, as candidates of the People's party, or representing the principles of that party, and that filing preceded the certificate of the officers of the convention. The resignation of Randall and Matthews declined by clear and express language only the nominations conferred by the State convention of the People's party; but included in their respective statements of declination was a

direction to the Secretary of State to omit their names from the official ballot, sufficiently indicating an intention upon their part to entirely withdraw as candidates for presidential electors. It is at least certain that the respondent has not certified their names, and that no person or party is insisting that his action in that regard was erroneous.

A vacancy, then, occurred in the list of candidates for the office in question, presented by the said certificate of electors. That vacancy at least was filled by the certificate which is now attacked, naming Jordan and Sims. It is not necessary, therefore, for this court to decide whether or not a vacancy in nominations made by a regular convention of a political party can be filled by an elector's certificate; even though, as in the case at bar, such political party has not again acted in the matter by convention, and the convention making the original nominations has not empowered any committee to fill vacancies. Indeed, the contention seemed to have narrowed to an attack upon the action of the respondent in grouping the names of Jordan and Sims with that of Van Meter, and using in connection with their names the party name " People's " without any qualifying words to indicate that they were not presented by a party convention. So far as concerns the objection to their being grouped with Van Meter, what has already been said is sufficient, bearing in mind that the latter-named person was originally nominated by the certificate of electors conjointly with Randall and Matthews for whom Jordan and Sims were afterward substituted.

It is, however, very seriously insisted on behalf of the relator that the respondent is not authorized to certify the designation of " People's " in connection with the names of these substituted candidates, but that he should use some other word of description, or add to that so used, which would clearly indicate that they were nominated by certificate of electors; and in support of that view we are referred to the case of Phillips v. Curtis (Idaho), 38 Pac., 405, which gives countenance to that proposition. That

case, however, is founded upon a statute which, although quite similar in some respects to our own, and particularly so concerning the making of nominations, is radically different in others, which must have considerable bearing upon the question.    In that State the method of preparing the ballot follows that of most of the States using the Australian system.    Their statute expressly requires that "the width of the ticket shall be divided into as many equal parts by lines the whole length of the ticket, * * * as there are political principles or parties represented by the candidates; each of said parties or divisions to have a heading or caption designating the political principle or party represented by the several candidates."    The ballot in that State, therefore, is arranged in separate columns, the candidates of each party being contained in one column with the name of the party or principle at the head.    In the case cited we are led to infer from the opinion that the People's party, although holding a convention and making certain nominations, had failed to mention any one as a candidate for State senator; and Phillips, who had been nominated for that office by another party, sought to have his name placed upon the ticket of the People's party under a nomination made by a certain number of electors, the certificate thereof designating him as People's party candidate.    The effect would be, if his prayer had been granted, that his name would have gone upon the regular People's party ticket and in the column upon the ballot set aside for the ticket of that party, and with the other candidates regularly nominated by a convention of that party.    It was held that the certificate authorized his name to go upon the ballot as an independent candidate only; and that any number of electors could not secure the name of any candidate which they saw fit to indorse to be placed on the ticket of any party.    It will be observed, whether it is important or not, that the candidate seeking the aid of the court in that case was already named upon the ballot in the ticket of another party.    The same comments are applicable to the case of Atkinson v. Lay, 115

Mo., 538, which was not cited by counsel, but has come to our notice. While according to each of those courts our entire respect, if the conclusions arrived at in the cases cited are not at all depending upon the character of their ballot, we would hesitate to follow them in their application to a statute such as that in force in this State. We are inclined, however, to the opinion that there is a well-defined distinction between those cases and the one at bar. In this State, any convention or primary meeting held for the purpose of making nominations to public office, and also a specified number of electors, may nominate candidates for public office to be filled by election (Sec. 84, Chap. 80, Laws 1890). A convention or primary meeting is defined as "an organized assemblage of electors or delegates representing a political party" (Sec. 85). Nominations made by a convention or primary meeting are required to be certified in writing containing the name, residence, and business of the person nominated, and, in not more than five words, the party or principle which such convention or primary meeting represents. It is required to be signed by the presiding officer and secretary of the convention or primary meeting, and verified by them in a certain manner (Sec. 86). Candidates for office may be nominated otherwise than by convention or primary meeting, as follows : a certificate containing the name of a candidate for the office to be filled, with such information as is required to be given in certificates of nominations by convention, shall be signed by electors, etc.; when the office is to be filled by the electors of the entire State, the certificate must be signed by not less than one hundred electors. Such certificates may be filed in the same manner and with the same effect as a certificate of nomination made by a party convention. (Sec. 88.)

Provision is made for declining a nomination, at least twenty-five days before election (Sec. 95); and in case of vacancy occurring for any reason, the same may be filled in the manner required for original nominations. (Sec.

96.)   In case the nomination thus vacated has been made
by a party convention, which has delegated to a committee
the power to fill vacancies, the same may be filled by
such committee.   (Sec. 97.)

It was urged by counsel for respondent that the lan-
guage of Sec. 96; viz., "may be filled in the manner
required for original nominations," expressly permitted a
vacancy to be filled in either of the ways provided for the
making of original nominations, irrespective of the manner
in which the original nomination in the particular instance
had been made; that is to say, either by convention (or
committee if authorized), primary meeting, or certificate
of electors.   Whether or not the language or purport of
the statute goes to that extent we do not, as already
intimated, express any opinion, as we find in this case the
vacancies to have been filled in the same manner as the
original nominations were made and presented.

In an earlier part of this opinion we adverted to the
method of making up the ballot, from which it appears
that there are no party headings thereon, nor columns set
apart for separate parties; but the ballot is required to
contain in addition to the name of the candidates, the
name of the party or principle represented by them respect-
ively as contained in the certificate of nomination.   It
must be observed that the certificate under which the con-
troversy arises as to the right to use the word "People's"
is not arraigned by any persons or authority representing
the People's party.   No one claiming any allegiance to
that party is here complaining of the act of Chairman
Patterson and his associates.   The complaint comes from
the Chairman of the State Committee of an entirely sepa-
rate political party.   While he probably has the right to
prefer such a complaint, and have the matter adjudicated,
nevertheless we are confronted with the fact that at the
instance of one not affiliated with the People's party in
any manner, so far as the record discloses, we are asked
to judicially deny the right of more than one hundred
electors, including the one highest in authority in the

party in this State, describing themselves as the representatives of that party from giving the party name to their candidates. If this certificate had come in conflict with other nominations made by the same party in regular convention, a very different question might arise. In the case at bar, however, we have before us the broad question whether in any case the Secretary of State is at liberty to respect the designation of a political party or principle mentioned in a certificate of nomination by electors, when the certificate is signed, sworn to, and presented by the State Chairman of such party, and in its body alleges that the signers represent the party, in the absence of any other existing nomination by such party for the same office; or whether he is bound to disregard such description, or add something to it, not found in the certificate, indicating the manner in which the nominations were made. There can hardly exist a doubt but that our legislation on the subject of elections is more or less imperfect, which fact invites conflict, and possibility of confusion; but the courts can not supply omissions in the law. Anticipating, or perhaps having experienced, controversy along this very line, many of the States have explicitly regulated the manner in which party nominations may be made. There is nothing of that character in our law. We have searched the election law in vain to discover any limitations upon party nominations. There is not a clause or line anywhere requiring, or tending in that direction, that a political party can only present nominations for public office through the medium of party conventions or primary meetings. The writer of this opinion believes that a wise regulation in that regard, and legislation explicitly defining the status of nominations by certificate of electors, would be desirable; but there is no such legislation at present, and the courts have no authority to place restrictions upon those matters when the legislature has left them open. A convention of delegates, or even a mass convention, is, after all, but a representation of some political party; neither constitutes the party itself; and

until the appropriate department has limited or restricted the method by which a party may be represented, and through what character of representation it may act, we do not consider it within the province of the courts to do so.   If there is any doubt about a matter of this character, then that construction of the statute should be adopted which will accord to the citizen the greater liberty in casting his ballot.   People v. District Court, 18 Colo., 26. It has been held that where two factions of the same political party have held separate conventions and certified nominations using the same political designation, the Secretary of State is without authority to decide which of the two is entitled to the party name, and is required in such case to certify both sets of nominations, giving to each the political designation found in the certificate of nomination.   People v. District Court (Colo.) supra; Phelps v. Piper, (Neb.) 67 N. W., 755; Shields v. Jacob, 88 Mich., 164.

In Kansas a nomination by electors designating their single candidate as the nominee of the Miners' and Laboring Men's party was recognized as a party nomination, and the court say "we think that each political party has a perfect right to select its candidates as it pleases, and have their names printed under its party heading; there is nothing in the law, nor in reason, preventing two or more political parties, whether acting through conventions, *or by petitions*, from selecting the same individuals for one or more of the offices to be filled."   Simpson v. Osborn, 52 Kans., 328.   In Minnesota, the supreme court upheld as party nominees certain candidates named by a mass convention, in opposition to rival candidates presented by a delegate convention of the same party; one of the reasons assigned being the entire absence of any statutory provision regulating the manner in which political parties should proceed in organizing conventions, or making nominations.   Manston v. Mc Intosh, 60 N. W., 672; 28 L. R. A., 605.

To hold that the provisions of the statute authorizing a

convention to make nominations, and defining a convention as an organized assemblage of electors representing some political party or principle, necessarily confines a political party to proceedings by and through a convention, especially in view of the other provisions affecting nominations by electors' certificates or by petition as it is sometimes popularly termed, would require the judiciary to interpolate something which has been omitted, perhaps purposely, from the statute. In the case at bar no convention of the People's party has acted as to two candidates for electors, subsequent to the declination of two persons named in convention, as well as by petition. No committee was given authority to act. The chairman of the State Committee with one hundred associates present the certificate in question as alleged representatives of the party. If a party may, under any circumstances, act otherwise than by convention or primary meeting, no lawful or reasonable objection can be urged to such action in the case and upon the facts before us. We conclude, therefore, that the respondent was not bound to disregard the political designation accompanying the names of the candidates Jordan and Sims in the certificate nominating them, that a fair and reasonable construction of the statute does not require him to add to or qualify the party name thus used. No such duty being imposed upon that officer, it does not rest upon the court. The writ prayed for must be denied.

CONAWAY, J., concurs.

GROESBECK, C. J., did not participate in the decision.