Davis, C. J.,
dissenting. I do not dispute the proposition that, ordinarily, a statute is presumed to be constitutional; and that courts should have a clear conviction of its conflict with the constitution before they will be justified in declaring it unconstitutional. This rule of construction is based on another presumption, namely, that the legislature acted with due respect to the constitution and enacted the law in the belief that it was within legislative power. There is nothing, however, in the history of the seventy-ninth general assembly, which passed the act now under consideration, nor in its attitude toward the judiciary, that would justify any such presumption.
But be that as it may, the question is not one of motives or of conduct, but of legislative power; and therefore as against a fair and reasonable showing of want of such power the presumption *53 is slight. The doubt in the judicial mind, which must prevail in favor of the statute, must be not a mere doubt such as is an easy refuge for an unwilling mind, but a real and substantial doubt, based on reasons which would have weight with any unprejudiced and reasonable mind.' It must be, as was said by Chief Justice Shaw, in Wellington et al., Petitioners, 16 Pick., 95, a “reasonable doubt.” This rule is recognized in many cases, too numerous to be cited here. Some of them are collected in Cooley’s Const. Lim. (7 ed.), pages 252, 253, note 1; and 8 Cyc., 803, note 77. The phrase “a reasonable doubt” has been the subject of much analysis and of many refined distinctions, especially in criminal cases; but it seems to be incapable of satisfactory definition, probably because it defines itself; for a reasonable doubt is, after all that may be said, a doubt that is reasonable, and until definite limits can be found for the word “reasonable” the phrase cannot be made any clearer by definition. For practical purposes it is easier to say what is not a reasonable doubt than to frame an all inclusive definition of the phrase; and it is generally agreed that a merely speculative or captious doubt raised to avoid a disagreeable conclusion, is not a reasonable doubt.
Accordingly, in Regents of the University of Maryland v. Williams, 9 Gill & Johnson, 383, the court, Buchanan, C. J., delivering the opinion, says: “It has been said, that a legislative act should not be pronounced unconstitutional or invalid, in a doubtful case; nor should it, where the doubt is bona ñde, and well founded, and not the result of *54 a disinclination to deny the authority of the legislature which all must feel, but none should yield to in violation of a solemn duty. But where a judge is satisfied upon full consideration, that an act of the legislature is contrary to the Constitution of the United States, the supreme law which he is bound to obey, and which must prevail over any act which comes in conflict, and cannot stand with it, or is for any other reason invalid, he has no choice; and all that is left him is honestly and fearlessly to do his duty; — from the faithful discharge of which, however unpleasant the task, no upright judge can shrink if he would. On the other -hand, a judge should not suffer himself to be betrayed to pronounce an act unconstitutional or invalid on insufficient grounds, by a morbid apprehension that a contrary decision might be ascribed to the want of a just and proper, sense of judicial duty.”
With these maxims of the law kept in view all the while, let us test this statute to see whether it be clear beyond a reasonable doubt, that it is in conflict with the constitution.
One of the propositions upon which the defendants in error base their contention for the constitutionality of this statute, is the doctrine stated in Lehman v. McBride, 15 Ohio St., 573, that “when the power of the general assembly to enact a law is drawn in question, the proper inquiry is, whether such an exercise of legislative power is clearly prohibited by the constitution. The grant of power being general, the question is as to the existence of a limitation, arising from special prohibition. *55 Such prohibition must either be found in express terms, or be clearly inferable, by necessary implication from the language of the instrument, when fairly construed according to its manifest spirit and meaning.” I accept that statement of the law as entirely correct. It was applied in Lehman v. McBride in considering the constitutionality of a statute which was enacted to facilitate the exercise of the constitutional right of every elector to vote. In the present case the doctrine is invoked to sustain an enactment, the effect of which, if it was not its purpose, is to impede and abridge the free and equal exercise by the elector of the right of suffrage as conferred by the constitution in Article Y, Section 1. The right thus conferred is unqualified in the constitution, save as to persons convicted of infamous crime and persons non compos mentis. The rule of construction in such cases is, that where the power is granted in general terms, the power is to be construed as co-extensive with the terms, unless some clear restriction upon it is deducible from the context; and when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases. Cooley Const. Limitations (7 ed.), 98.
Here then is a provision of the constitution which confers on the elector the untrammeled right to vote intelligently and as he pleases at every election. Any other construction of the grant would be subversive of free government; *56 and any attempt by the legislature, under pretext of regulating elections, or otherwise, to add to or abridge the right thus conferred on the elector would be clearly repugnant to the constitution.
Accordingly it was held in Monroe v. Collins, 17 Ohio St., 665, that “the legislature have no power, directly or indirectly, to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise; and laws passed professedly to regulate its exercise or prevent its abuse must be reasonable, uniform and impartial.” This ruling was approved and followed in an elaborate opinion of this court, per Atherton, J., in Daggett v. Hudson, 43 Ohio St., 548.
The doctrine of these cases has been distinctly approved in numerous cases, some of which I cite as follows: Yick Wo v. Hopkins, 118 U. S., 356, 371; State, ex rel., v. Findlay, 20 Nev., 198; State, ex rel. Atty. Gen., v. Dillon et al., 32 Fla., 545, 557; Atty. Gen. v. Detroit, 78 Mich., 546; Lyman v. Martin, 2 Utah, 136; State, ex rel., v. Corner, 22 Neb., 265; Capen v. Foster, 12 Pick. (Mass.), 485, 489; Kinneen v. Wells, 144 Mass., 497; see also Mechem on Public Offices and Officers, Sec. 148; 10 Am. & Eng. Ency. Law (2 ed.), 580. I assume that no one will have the hardihood to dispute a doctrine so well intrenched in principle and authority.
How do these principles apply to the statute now under consideration? — a statute which the majority do not deny is vicious and dangerous in the extreme; a statute which will obviously a'c *57 complish a result the opposite of that for which it was professedly enacted, a non-partisan judiciary; because it forces every candidate for a judicial office to get into politics and entices him to appeal to every powerful or influential interest or combination which may seem to control votes.
The statute provides that the names of all candidates for judicial offices shall be placed upon a separate and independent ballot without any distinctive mark whatever, which shall be deposited in a separate ballot box; and that there shall be separate poll books and tally sheets used for the election of all such officers. The act further provides that such election “shall be governed and controlled by the general election laws of the state except as otherwise provided by this act.” The general election laws give to the elector the amplest opportunity for intelligent and independent voting. He may vote a straight party ticket of his own choosing, if he so wishes. He may by comparison of the different party tickets, choose and vote for candidates selected from the various tickets, who may seem to him to be most nearly representative of his own personal views; or he may ignore all party tickets and vote only for independent candidates. Even the illiterate voter is aided as much as possible by provision that he may vote his straight party ticket by making a cross in the circle under his party emblem. Fernbacher v. Roosevelt, 90 Hun (N. Y.), 441. All this is in recognition of, and in aid of, the right of the voter to make his own choice as to whether he will vote for a party candidate or not.
*58 This privilege which the constitution guarantees to the elector, he may exercise as to every office to be filled, except a judicial office, as provided in this act. The legislature by this exception has put a condition upon the right of suffrage which the constitution does not impose, and which, as I have shown, is not within the exercise of legislative power, as limited in the constitution, because it denies, abridges and impedes the right of the citizen to cast a free, untrammeled vote and have it honestly counted; and it is not reasonable, uniform nor impartial. Monroe v. Collins, supra, and Daggett v. Hudson, supra. Even if this provision does not effectually deny the right to vote as the voter wishes, the legislature may not make the exercise of the right so difficult as to amount to a denial. DeWalt v. Bartley, 146 Pa. St., 529; Attorney General v. Detroit, 78 Mich., 545. The municipal elections of last year demonstrated this to be the effect of the law; because thousands of voters who voted for other officers, did not vote at all for judicial officers; and from the best information which I am now able to obtain concerning the recent national and state election, it is apparent that not more than thirty per cent., probably not more than twenty-five per cent., of the total vote was cast for judges of this court. It is impossible to maintain, in the face of these stupendous facts, that this law does not impede the free and uniform exercise of the right of suffrage to an.extent that, in many cases, it may result in a denial of the right.
*59 Furthermore, the act provides that the whole number of ballots to be printed shall be divided by the number of candidates for each of the offices respectively, and the quotient so obtained shall be the number of tickets in each of the series of ballots to be printed as follows: the names of candidates shall be arranged in alphabetical order and the first series of ballots printed; then the first name shall be printed last and the next series printed, and so shall the process be repeated until each name shall have been first. These ballots shall then be combined in tablets with no two of the same order of names together, except when there is but one candidate for any of said offices, etc. Can anybody conceive of any purpose for which such a scheme was devised, other than to make it difficult, if not impossible, for an elector,, especially for an elector who has not the equipment or the opportunity to make a thorough investigation, to vote for a party candidate? And is not this providing a limitation upon the free and untrammeled right to vote which is given by the constitution? Does not this act clearly abridge such right by unreasonably impeding its exercise? And again, is the act “reasonable, uniform and impartial” in applying its restrictions only to the judicial branch of the government, which is equal in rank and equal in importance with the executive and legislative branches?
The majority admit that these criticisms of the act are forcible and persuasive. Still they doubt. In Independence Party Nomination, 208 Pa. St., *60 108, per Mitchell, C. J., the supreme court of Pennsylvania said: “The constitution confers the right of suffrage on every citizen possessing the qualifications named in that instrument. It is an individual right and each elector is entitled to express his own individual will in his own way. His right cannot be denied, qualified or restricted, and is only subject to such regulation in the manner of its exercise, as is necessary for the peaceable and orderly exercise of the same right in other electors. * * * Every doubt, therefore, in the construction of the statute must be resolved in favor of the elector.” So the supreme court of Colorado, in People, ex rel., v. District Court, 18 Colo., 26, held: “In cases of' doubt between two constructions, that should be adopted which will afford the citizen the greater liberty in casting his ballot. The legislature may. enact necessary laws for the purpose of regulating in detail the manner of conducting elections, but it cannot, under the guise of regulation, substantially impair the constitutional right of any elector to cast his vote at each election according to his own preference, and to have it counted as cast.” And upon authority of the case, just quoted from, the supreme court of Wyoming, in State, ex rel., v. Burdick, Secretary of State, 6 Wyo., 448, 465, declared the same doctrine.
Upon the whole case, therefore, and for the reasons stated, it convincingly appears to me that this statute is repugnant to the constitution; and I can see no place for any doubt that has a substantial reason back of it.
*61 There is another phase of this case which should' not be passed over, for I regard it as conclusive of the unconstitutionality of the statute. Confessedly the exercise of the right to vote by any voter, and especially an ignorant or illiterate voter, is made more difficult, confusing and embarrassing by this act, in that it obliterates the party designations and party emblems allowed in other cases; and there can be no reasonable doubt that in the case of an ignorant or illiterate voter the provisions of this act amount to a practical denial of the right to vote. It may or may not be desirable to eliminate this class of voters, but the constitution does not disqualify them, and it is clearly not within the power of the legislature to do so. In Rogers v. Jacob, Mayor, 88 Ky., 502, it was held that “a statute which requires votes to be given by ballot must not deprive illiterate persons of such reasonable aid and information as may be necessary to enable them to cast their ballots understandingly, and in so far as it attempts to do so it will be held invalid. A statute which requires each voter to retire to a compartment and there alone and unaided indicate by a mark on his ballot, the various candidates for numerous offices he wishes to vote for, is held to be inoperative in so far as it deprives persons unable to read or write of such reasonable aid and information as may be necessary to enable them to- cast their ballots understandingly.”
The supreme court of Wisconsin expressed this distinction in the following concise and forcible language: “We have no doubt that the legislature *62 have the- power to provide that a person who has a right to vote under the constitution, shall be allowed to exercise this right only in the town where he resides, because this would be only to prescribe the place where a right which he possessed under the constitution should be exercised, and fixes upon the most convenient place for its exercise. Such a provision does not add to the qualifications which the constitution requires; but an act of the legislature which deprives a person of the right to vote, although he has every qualification which the constitution makes necessary, cannot be sustained.”
Since the judgment of the majority, in my opinion, disregards fundamental rules of constitutional interpretation, as well as fundamental rights of the citizen, I have felt it to be proper to make a more profuse citation of authorities than would ordinarily seem to be required. ' I have tried to uncover and make plain again some of the ancient landmarks which the modern iconoclast would destroy, in his zeal for so-called reform.