THE STATE OF WYOMING, on the relation of EVERETT T. COPENHAVER, Plaintiff,

v.

WILLIAM "Scotty" JACK, as Secretary of State, of the State of Wyoming, Defendant.

(No. 2316; Oct. 28, 1944; 153 P. 2d 149)

406

For the plaintiff there was a brief by A. D. Walton, M. A. Kline, W. O. Wilson, M. S. Reynolds, Howard B. Black, Allan A. Pearson, Clyde M. Watts, all of Cheyenne, Wyoming, P. W. Spaulding, of Evanston, Wyoming, and W. E. Hardin, of Lander, Wyoming, and oral argument by Mr. Kline, Mr. Walton and Mr. Wilson.

For the defendant there was a brief by L. J. O'Marr, Attorney General, Hal E. Morris, Deputy Attorney General, Ray E. Lee, and L. C. Sampson, Assistants to Attorney General, and oral argument by Messrs. O'Marr, Morris and Lee, all of Cheyenne, Wyo.

## OPINION

KIMBALL, Chief Justice.

This is an action brought originally in this court for a writ of mandamus to compel the Secretary of State to certify to the county clerks of the various counties the nomination of the relator as the Republican candidate for the office of Secretary of State to be voted for at the general election to be held November 7, 1944.

Mart T. Christensen, who in the year 1942 was elected Secretary of State for the term beginning the first Monday in January, 1943, and ending the first Monday in January, 1947, died October 12, 1944, twenty-six days before the date of the next general election.

The statute (§36-101, R.S. 1931) provides for general elections to be held on the Tuesday next after the first Monday in November each even numbered

year at which there shall be elected, among others, all state officers "which are made elective by law, whenever there is a vacancy * * *; provided, however, that whenever a vacancy * * * shall occur less than twenty-five days prior to such election, then, in that case, at such election no person shall be elected to fill such vacancy." See, also, § 36-106, R.S. 1931.

After the death of Mr. Christensen, and before October 16, the republican state central committee passed a motion nominating the relator as the republican candidate for the office to fill the unexpired term of Mr. Christensen, and there were filed in the office of the Secretary of State a certificate of the nomination and a writing showing relator's acceptance thereof.

October 16, defendant took over the office of Secretary of State under appointment by the Governor and refused, and continues to refuse, to certify the nomination. This action to compel him to do so was filed October 19, and after the issuance of process had been waived, and time for briefs shortened by stipulation, oral arguments were heard and the case taken under advisement by the court October 27. Because it was thought that the right to the writ should not remain in doubt any longer than was necessary we announced our decision orally on October 28, stating that the petition for the writ was denied on the ground that the state central committee did not have authority to make a nomination of a party candidate in the disclosed circumstances.

The relator was unable to point to any statute giving the committee such authority, and this opinion might very well close with this statement, if it were not for the further contention that the committee had inherent power to make the nomination.

We think it has always been assumed in this state that the legislature may and should regulate the making of nominations of candidates for public office whose names will be printed on the official ballots. Early statutes were summarized in State ex rel. Blydenburg v. Burdick, 6 Wyo. 448, 462-463, 46 Pac. 854, 858-859, decided in 1896. At that time nominations could be made by conventions or primary meetings or by a specified number of electors. The only authority for making a nomination by committee was in case of a vacancy occurring in a nomination previously made by a party convention which had delegated to the committee the power to fill the vacancy, and in that respect the statutes, as they now appear in the revision, have not been changed. See sections 36-508, 36-517, 36-518, 36-519, R.S. 1931.

The statutes just referred to, permitting party nominations by conventions or voluntary primaries, were rendered inoperative in most respects by the compulsory primary act of 1911, now sections 36-601, to 36-648, R.S. 1931. This act provides for the election of county, state and judicial central committees, who (as provided in the original act, § 2519, C.S. 1920) "shall have the power to make nominations to fill vacancies occurring among the candidates of their respective parties nominated within the territory over which they respectively, have jurisdiction by the primary nominating elections; * * *"

On October 2, 1924, while the law, as quoted above was in force, Governor William B. Ross, whose four-year term of office began in January, 1923, died, and a few days later the Secretary of State asked the Attorney-General for an opinion as to what nominations for governor to fill the unexpired term should be received and certified to the county clerks. The Attorney-General's reply, insofar as it touched on the

point under consideration, was that: "Under the authorities it seems clear that the state committees have no power to make an original nomination as would be necessary in this instance." In support of his opinion the Attorney-General cited Coovert v. Olcott, 81 Ore. 415, 159 P. 974; State ex rel. v. Pratt, 141 Ia. 196, 119 N.W. 620; Stewart v. Polley, 30 So. Dak. 54, 137 N.W. 565, and State ex rel. Smith v. Duncan, 55 Mont. 376, 177 Pac. 248. The opinion states the general rule supported by the cited cases and many others. See Anderson v. Cook, 102 Utah 265, 130 P. (2d) 278, 143 A.L.R. 987, and note 143 A.L.R. 996. In 20 C.J. 109, § 103, and 29 C.J.S. 138, § 105, it is said that: "Unless authorized to do so by statute or party rule, or by convention, a party committee has no power to make original nominations." See, also 18 Am. Jur. 272, § 142.

Later, in 1929, the legislature amended the statute as quoted above from § 2519, C.S. 1920, by providing that such committees "shall have no power to nominate a candidate for any office for which no nomination was made by the voters of parties in the primary election." R.S. 1931, § 36-632.

Still later, at the legislative special session, held in December, 1929, there was passed "an act concerning nomination of candidates to be voted for at special elections." Session Laws, Special Session, 1929, ch. 10; Sections 36-526 to 36-532, R.S. 1931. In that act the political committees are authorized to call caucuses, meetings and conventions, but are given no new powers in the matter of naming candidates.

We think that under the statutes of Wyoming it is clear that the legislature has never recognized any power in a political committee to make party nominations, except as delegated to it either by the party

convention or the legislature. See Hamilton v. Raub, 131 Kan. 392, 399, 292 P. 396, 399; McLyman v. Molloy, 53 R. I. 4, 10, 162 Atl. 849, 851. The case of State ex rel. Summer v. Mitchell, 118 Fla. 513, 159 So. 775, is distinguishable because the statutes of Florida, as explained in that case and in State ex rel. Andrews v. Gray, 125 Fla. 1, 169 So. 501, recognize certain inherent or implied powers of political committees to make party nominations.

The writ prayed for will be denied.

BLUME AND RINER, J., concur.

BLUME, J., concurring:

Former Governor William B. Ross died October 2, 1924. The situation presented in connection with his successor was almost identical with the situation in this case and under substantially the same laws except the Soldier's Vote Act which does not change the principles or facts involved in so far as discussed in this opinion. Former Attorney General Howell rendered an opinion on October 9, 1924 (Reports and Official Opinions of Attorney General, 1923-1924, p. 222) as to what should be done to fill the vacancy. He held: First, as we now hold,—that under existing statutes original nominations cannot be made by state committees; second, that in emergencies such as existing at that time and was true this year, the time for filing nomination papers should be held not mandatory but directory, that is to say immaterial, provided only that opportunity be given to the people to vote (See 29 C.J.S. 208) ; third, that where a death of a state official occurs after the holding of the primaries (in a year when state officials are not ordinarily elected) and more than 25 days before the general election (Sec. 36-101 Rev. St. 1931) the major parties may hold a convention and thus lawfully nominate a can-

didate to fill the vacancy caused by the death of the state official. This opinion was accepted as correct and acted upon by both major political parties and a Governor was elected that year to fill the vacancy in accordance with the proceedings so had.

The present Attorney General agrees only with the first point above mentioned, and believes that the precedent established as to the other two points above mentioned by his predecessor in office, and which has stood unchallenged for twenty years, should not be followed. In other words, he contends that the time for filing nomination papers is mandatory and cannot be deviated from even on special occasions, and that such nomination papers must in any event be filed not less than 40 days previous to the election as provided by Sec. 36-515, Rev. St. 1931, which time is the same as the time which was fixed by statute in force in 1924; and he further contends that the major political parties cannot, on occasions like the present, nominate any person to office except only in pursuance of the primary election law; that the convention system cannot be used by them on an occasion like this, but that the law concerning conventions for such occasion is confined to minor political parties casting less than 10 per cent of the votes.

It is not necessary in this case for us to pass upon these contentions, but I think we should point out, at least for the benefit of the legislature, the conclusions to be drawn therefrom, if correct.

The election in the year 1924 was on November 4. The conventions by the major political parties were held on October 14, so that the nomination papers could not have been filed before that day, which was only 21 days before the general election. If, accordingly, former Attorney General Howell was wrong

and the present Attorney General is right, Nellie Tayloe Ross should not have been elected Governor during that year, but the Secretary of State should have continued to perform the duties of that office. What happened then may happen again.

Again, if the time for filing nomination papers is mandatory as contended, it is clear that the provision of Sec. 36-101 that a vacancy occurring more than 25 days before a general election shall be filled at that election is, as to the 25 days, wholly meaningless, although that provision has never been, at least expressly, repealed. If it is meaningless, it ought not to be permitted to remain a part of our statutes.

Furthermore, even if it is true, as here contended, that the time for filing nomination papers is always mandatory, yet since the statute provides that a vacancy in a state office occurring before a general election shall be filled at that election, and since it is conceded that minor parties may nominate candidates by convention, and since the statute makes provisions for independents to file nomination papers (Sec. 36-510, Rev. St. 1931), and since nomination papers for a state office to be voted for at a primary election must be filed 30 days before such election as provided by Sec. 36-605, Rev. St. 1931—assuming that the 40 days mentioned in Sec. 36-532, Rev. St. 1931, does not apply—then, if a vacancy in the office of Governor or other state office should occur in years similar to this in the period extending from 29 days prior to the primary election to a date which is 40 days prior to a general election—comprising a period of two months or more—it follows that if the present contention is correct and former Attorney General Howell was wrong, minor parties and independents could, during this period of about two months, have the names of their candidates placed on the election ballots to fill

the vacancy, but the major political parties could not do so, but would be wholly excluded. Even if it be assumed that political committees could file a nomination for such vacancy occurring before the primary election, the period above mentioned would be reduced by only 14 days (Sec. 36-630, Rev. St. 1931, as amended). A vacancy during such period might not happen very often, yet the recent sad and sudden death of the late Secretary of State reminds us that it may happen.

It would, accordingly, seem that both major political parties are equally interested in having the coming legislature scrutinize the election laws of the State, to make such amendments and corrections as it may deem best, so as to leave no room hereafter for conflicting opinions.