PENWELL, APPELLANT, *v.* BOARD OF COUNTY COM-
MISSIONERS OF THE COUNTY OF LEWIS
AND CLARKE, RESPONDENT.

. [No. 1,435.]

[Submitted October 18, 1899. Decided November 27, 1899.]

*Deputy County Attorneys—Compensation—Power of County Commissioners—Statutes—Construction.*

1. Political Code, Section 4596, declares that the "maximum annual compensation allowed to any deputy" is as follows,—setting out various officers whose salaries are declared "not to exceed" the sum fixed, but in providing for the salary of chief deputy county attorney the words "not to exceed" were omitted. *Held,* that, since the statute by a general controlling limitation provided that all the amounts fixed should be "the maximum annual compensation allowed," the words "not to exceed" were surplusage and hence the compensation of chief deputy county attorney was not fixed by the statute at a certain sum, but might be established at a sum less than the maximum named, provided the power to determine the number ʃof deputies and their compensation, within the maximum limits prescribed, may be exercised by some authority elsewhere recognized by law.

2. Since deputy county attorneys are included by Act March 19, 1895, in Political Code, Section 4596, fixing the maximum salary of deputy county officers, the board of county commissioners have power to fix the salaries of deputy county attorneys under Session Laws, 1893, p. 60, establishing the number of deputy county officers, and providing that their compensation shall be determined by the board of county commissioners, within the maximum limits fixed by the act, though deputy county attorneys are not provided for therein.

3. Repeals by implication are not favored. .

*Appeal from District Court, Lewis and Clarke County; H. C. Smith, Judge.*

ACTION by Lewis Penwell against the board of county commissioners of the county of Lewis and Clarke. Judgment for defendant, and plaintiff appeals. Affirmed.

*Mr. T. J. Walsh,* for Appellant.

*Mr. C. B. Nolan, Attorney General,* for Respondent.

MR. JUSTICE HUNT delivered the opinion of the Court.

By the agreed statement of facts before us, it appears that the plaintiff, Lewis Penwell, was, from and after January 1, 1899, the duly appointed, qualified and acting chief deputy county attorney, and only deputy county attorney of Lewis and Clarke county; that on January 31, 1899, he presented his bill for his salary for the month of January, 1899, amounting to the sum of $150; that thereafter the bill was audited for $125; that thereupon the board of county commissioners of Lewis and Clarke county, on the 1st day of February, 1899, allowed the bill for the sum of $125, but refused to allow the bill for the sum of $150. Plaintiff, Penwell, refused the warrant for $125. The district court held that the action of the county commissioners was lawful, and denied the plaintiff's motion for judgment for $150. Judgment was entered accordingly in favor of the defendant, and from this judgment the plaintiff appeals.

The decision upon this appeal requires a construction of the statutes pertaining to the salary of the chief deputy county attorney. Section 4596 of the Political Code is in part as follows:

"The maximum annual compensation allowed to any deputy or assistant is as follows:

"First and second classes:

"Under sheriff not to exceed eighteen hundred dollars.

"Each deputy sheriff not to exceed twelve hundred dollars.

"Each deputy clerk not to exceed twelve hundred dollars.

"Chief deputy clerk of the district court not to exceed fifteen hundred dollars.

"Other deputy clerks of the district court not to exceed twelve hundred dollars.

"Deputy treasurer not to exceed twelve hundred dollars.

"Deputy assessor not to exceed twelve hundred dollars.

"Chief deputy county attorney eighteen hundred dollars.

"Other deputy county attorneys fifteen hundred dollars."

The contention of appellant is that by this section his salary as chief deputy county attorney was fixed at $1,800 per annum. He lays stress upon the omission of the words "not to exceed" from the statute in relation to the chief deputy and other deputy county attorneys, and forcibly argues that the frequent use of that expression elsewhere in the section quoted implies some significance to its singular omission in providing for the compensation of deputy county attorneys.

Much of this argument is answered, we think, by noting that the statute, in its general words of limitation, provides that "the maximum annual compensation allowed to any deputy or assistant is as follows"; for this limitation controls the compensation of any and all deputies included in the list of deputies directly thereafter specified in the text, and it just as effectively provides a maximum compensation to be allowed to these deputies where the words "not to exceed" are omitted as is the compensation limited in the instances where they do appear. We believe that all that could have been accomplished by the use of the words "not to exceed" had theretofore been done by fixing a maximum annual compensation, and that their repetition was therefore needless. The phraseology of the section seems to have been principally taken from an act of March 9, 1893 (Session Laws of 1893, p. 60), and an act of March 6, 1891 (Session Laws of 1891, p. 237), where a like tautology is apparent in fixing the compensation of various deputy officials other than deputy county attorneys. Deputy county attorneys were not included in these acts of 1891 and 1893, because the law nowhere specifically recognized such officials until the Codes of 1895 were adopted. When the Codes were enacted, however, the legislature of the session of 1895 whereat the Codes were adopted, and after

their adoption, constructed a schedule of salaries and fees by apparently remodeling the Session Laws of 1891 and 1893 as far as they went, and by adding to the list of deputy officials embraced in such laws a schedule of compensation for deputy county attorneys, whose official status, as stated above, had been first expressly recognized by the Political Code as just theretofore adopted, on February 25, 1895. But, in adding the new offices of chief deputy and deputy county attorneys, the legislature of 1895 avoided the tautology of its predecessors as to those offices never before known, and for · which no provision had ever been made before the session of 1895. In our opinion, therefore, there was no evident intention on the part of the legislature, by the omission referred to, to fix the compensation of the deputy county attorney at a certain sum, or to take away the right to put it at a sum less than the maximum named, provided the power to determine the number of deputies and their compensation, within the maximum limits prescribed, may be exercised by some authority elsewhere recognized by the law.

Section 4602 of the Political Code provides in part as follows: "The whole number of deputies allowed the county attorney in counties of the first and second class must not exceed one chief deputy and one deputy; and in all other counties such deputies as may be allowed by the board of county commissioners, not to exceed one chief deputy and one deputy." This section is part of the act of March 19, 1895.

Section 4603 of the Political Code is as follows: "The number of deputies allowed to county officers and their compensation must not exceed the maximum limits prescribed in this chapter. The officers entitled to deputies must within thirty days after this Code takes effect file a certificate of appointment of the deputies in their office with the county clerk. The salaries must be allowed and paid monthly upon the order of the board of county commissioners and paid out of the contingent fund." This section is also part of the act of March 19, 1895, which also includes section 4596, heretofore quoted.

It will be seen that section 4602 relates to the number of

deputy county attorneys, while section 4603 is general in its language, only confining the number of deputies generally allowed to county officers and their compensation, within the limits prescribed "in this chapter"—so that, if the power to allow deputy county attorneys is vested in some authority, it must be ascertained, and, when that is found to exist, we may ask:   Is it that same power which shall determine the number of deputies and the amount of their compensation, within the circumscribed limits of chapter IV. of the Political Code, which includes the sections and section 4596, just referred to? That the sections of the Political Code assume that there is an authority somewhere to make such a determination in respect to number and compensation is plain from the language of the sections cited; for it will not be presumed that provision for payment of deputy county attorneys was so carefully made with no regard to what authority was to make the decision upon the question of number and compensation, within the limits prescribed.

. As before stated, in 1891, by an act approved March 6, 1891 (Session Laws of 1891, p. 235), the legislature provided for the maximum annual compensation of deputies for certain officers other than deputy county attorneys.   This law also made general provision for allowing deputies and their compensation to county officers, "within the maximum limits named in this act," and placed the determination of these matters upon the boards of county commissioners.   In 1893 (Session Laws of 1893, p. 60) the legislature amended Section 4 of the act of 1891, referred to, by revision of the compensation, and reenacted the clause providing that "the number of deputies and their compensation allowed to the county officers within the maximum limits named in this act shall be determined by the board of county commissioners," but again we fail to find any provision for deputy county attorneys.

The further question is then involved:   Was the authority given to the board of county commissioners by the act of 1893 carried forward so as to obtain in respect to a determination of the compensation of deputy county attorneys, such officials

being recognized by the Codes of 1895 and the acts of 1895 amendatory of the Codes; or were the boards of county commissioners deprived by the act of March 19, 1895, of any such power through a repeal of that section of the law of 1893 which had given the necessary power ? The act approved March 19, 1895, just mentioned, was an act to amend Sections 3133, 3135, 3137, 3138, and 3139, and to repeal Section 3136, of the Political Code, adopted February 25, 1895. Its provisions appear in the Political Code as Sections 4594, 4596, 4597, 4602, and 4603. Sections 4596, 4602, and 4603 have been already quoted in this opinion. Section 3136 of the Code, as first adopted and thereafter repealed by the act of March 19, 1895, merely authorized the appointment of deputies when in the judgment of the board of county commissioners the salary of the chief officer was inadequate and he was unable to perform the duties. The purpose of the repeal of this section has been stated by this Court in *Jobb* v. *Meagher Co.*, 20 Mont. 424, 51 Pac. 1034, in the following language: "The purpose of the legislature in repealing Section 3136 was to prune the Code of this section, which was not in harmony with that portion of the act of 1893 upon the subject; and, in order to disencumber the Code of a redundancy or repetition, Section 3139, the subject-matter of which was substantially embraced in the act of 1893, was amended by omitting those provisions already incorporated; and, as we think, a reading of Section 4603, which is Section 3136 as amended, discloses that intent." We do not attach importance to this section in the consideration of the question under examination.

It was also held in *Jobb* v. *Meagher Co.*, *supra*, that the section quoted from the act of 1893 remains in force, at least in so far as it vested in the boards of county commissioners the power to determine the number of deputies, and their compensation, allowed to sheriffs and other county officers whose existence was recognized by the Laws of 1891 and 1893. This conclusion was based upon the ground that there is nothing in the act of March, 1895, so inconsistent with the act of March 9, 1893, as to repeal that part of said act giving

authority to the board of county commissioners to determine the number of deputy sheriffs.    We now go further, and, by virtue of the doctrine that repeals by implication are not favored, hold that by Sections 5181, 5184 and 5186 of the Political Code the section referred to in the law of 1893 was brought forward to apply to a more extended field; and though at the time of its original adoption it had reference alone to deputies of officers then recognized by the statute of 1893, and notwithstanding the fact that certain legislation affected by it had been repealed by conflict with later enactments, still that particular provision was brought forward by the act of March 13, 1895, (Section 5186, Political Code), and obtains, as affecting legislation adopted in 1895 embraced in Chapter IV of the Political Code, and is to be construed in harmony therewith.    It became a general provision, applicable to the determination of the compensation of deputies of all county officers, and, being especially preserved from repeal as not repugnant to other enactments the legislative intent was to extend its applicability to deputy county attorneys and other deputies provided for by the legislation of 1895.    (*State ex rel Aachen, Etc. Ins. Co.* v. *Rotwitt,* 17 Mont. 41, 41 Pac. 1004.)

We are strengthened in this opinion by a policy pervading the statutes which generally gives to the board of county commissioners power to control the number and compensation of deputy county officials.    The legislature has selected such boards as best fitted to guard the economic interests of the county, doubtless recognizing that, in view of the fact that the county is to pay the deputies, a discretionary power in respect to their number and salaries might be exercised with more impartial regard to the public needs by boards of county commissioners, acting within certain bounds, than could be exercised by any other power, not excepting the legislature itself.

Our conclusion is that it was the intent of the legislation considered to give the boards of county commissioners power to determine the number of deputies to be allowed to the

county attorneys in counties of the first and second class, and to determine their compensation, subject, always, to the limits of Chapter IV of the Political Code.

The judgment is affirmed. *Affirmed.*