STATE EX REL. SMITH, PLAINTIFF, *v.* DUNCAN, COUNTY
CLERK, DEFENDANT.

(No. 4,330.)

(Submitted December 14, 1918. Decided December 17, 1918.)

[177 Pac. 248.]

*Elections—Primary Election Law—Construction—County Cen-*
*tral Committees—Power to Fill Vacancies—Mandamus.*

Elections—Primary Election Law—County Central Committee—Power to
Make Original Nomination.
   1.  *Held,* that neither section 16 nor section 32 of the Primary Elec-
tion Law (Laws of 1913, p, 570) empowers a county central committee
to make an original nomination of a candidate to an office to be filled
at a special election, the officer-elect having died soon after election
and before induction into office.

Statutes and Statutory Construction—Title.
   1a.  The title of a statute is indicative of the legislative intent in
passing it.

Same—Rule.
   2.  A statute must be construed in its entirety, and, if possible, mean-
ing must be given to every word, phrase, sentence and section, the
presumption being that the legislature did not employ language with-
out meaning.

   [As to rules for construction of statutes, see note in 12 Am. St. Rep.
826.]

Elections—Primary Election Law—Filling Vacancy—Power of County Cen-
tral Committee.
   3.  A vacancy caused by the death of a state senator soon after elec-
tion but before induction into office was a vacancy in the office and
not in the candidacy of the nominee for the office, which latter vacancy
the county central committee could properly have filled under the pro-
visions of the Primary Election Law, while the former it had no power
to fill (see paragraph 1 above).

Original application for writ of mandate by the State on the
relation of Park Smith, against A. J. Duncan, County Clerk
and Recorder of the County of Lewis and Clark. Motion to
quash alternative writ sustained.

*Mr. E. D. Phelan* and *Mr. C. A. Spaulding,* for Plaintiff, ar-
gued the cause orally.

*Mr. Lester Loble* and *Mr. Jos. R. Wine,* for Defendant; *Mr.*
*Wine* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held November 5 of this year, Frank D. Miracle was elected state senator for Lewis and Clark county to fill the unexpired term of the senator elected in 1916 who resigned. On November 22 the newly elected senator died, and on November 27 a special election was duly called for December 28 to elect a senator to fill the vacancy. On November 30 the Republican county central committee, acting through its executive committee, assumed to nominate Park Smith as the candidate of the Republican party for state senator, and certified his nomination to the county clerk, who refused to file the certificate. This proceeding was instituted to have determined the question whether under the laws of this state the county central committee had authority to make the nomination. If it had, the county clerk was required to file the certificate. If it had not such authority, the clerk cannot be compelled to file the certificate.

Plaintiff must assume the burden of calling to the attention of this court some provision of law which gives countenance to the authority which the committee assumed to exercise, for clearly it exceeded any authority which vested in a like body from 1895 to 1912. Under the convention system of nomination the central committee never had authority to make original nominations. It was only after a duly constituted convention had made a nomination and a vacancy occurred before the election that the committee was authorized to act. It did not make an original nomination, but merely filled the vacancy. But [1.] counsel for plaintiff rely upon the provisions of section 32 of the Direct Primary Election Law (Laws 1913, p. 570) for the authority exercised by the committee in this instance. Was it the purpose of that Act to clothe the central committee with power to make a nomination originally? We think not. Such a construction of the language of section 32 would lead to a result at war with the intent and purpose of the entire measure. It is entitled "A law to provide for party nominations by direct

vote," and the title of a statute is indicative of the legislative intent in passing it.

Within the compass of this Act it was clearly the purpose to confer the power to make original nominations upon the electors voting at a primary election. If we eliminate from the Act the idea of direct nominations by the electors, nothing whatever of consequence remains. In order to interpret the statute, that fundamental purpose must be kept constantly in view, and every section of the Act read with that idea in mind.

Section 32 provides for the election of a central committeeman in every precinct, for the organization of the county and city central committees, and confers upon such committees specific authority as follows: "Said county and city central committees shall have the power to make nominations to fill vacancies occurring among the candidates of their respective parties nominated for city or county offices by the primary nominating election, where such vacancy is caused by death or removal from the electoral district, but not otherwise." No authority is here given to make an original nomination, but the power conferred is limited strictly to filling vacancies occurring among candidates nominated by the primary nominating election. As if to add emphasis to the fact that very limited authority was intended to be conferred upon the committee, the statute restricts the causes for which a vacancy may occur, to death or removal of the candidate from the jurisdiction. It will be observed that though the naked authority is conferred by the section, no provision is made for its exercise; but a statute is to be construed in its entirety, and by turning to section 16 we are apprised of the procedure necessary to be followed by the committee in filling such a vacancy.

Counsel argue that section 16 itself confers upon the committee the authority to fill vacancies occurring after the primary and before the general election, and insist that the language of section 32 must be construed to give some additional authority, otherwise it is meaningless. It is an elementary rule that in [2] construing a statute the court must give meaning to every

word, phrase, sentence and section, if possible to do so, and the rule is grounded in the presumption that the lawmakers did not employ language without meaning. We encounter no difficulty, however, in applying that rule to the provisions of the two sections now under consideration.

We have given our interpretation to section 32. Section 16 refers to the same character of vacancy, and provides: "Such vacancy may be filled by the committee which has been given power by the political party *or this law* to fill such vacancies substantially in the manner provided by sections 529 and 530, Revised Codes of Montana 1907."

It will be observed that this language is general. It refers to any central committee recognized by the Act. It authorizes such committee to exercise certain powers when delegated to it by the political party for which it stands sponsor, or when conferred *by this Act.*

The only authority which a state or district central committee has to fill vacancies is delegated authority, derived from the political party, whereas the like power is conferred upon the county and city central committees by the express provisions of section 32 of this Act. This latter section creates the county and city central committees and defines their powers. Section 16 defines the circumstances under which they may exercise the powers, and prescribes, by reference, the mode of procedure. It likewise recognizes the authority of the state and district committees to fill vacancies when authorized by the parent political organization to do so. The same fundamental principle pervades this Act as the prior statute, *viz.:* The committee has no authority to make an original nomination. Its power is limited to filling vacancies which occur after nominations have been regularly made.

Finally it is insisted that since Mr. Miracle was nominated [3] at the primary nominating election held in August last, his death after election created a vacancy within the meaning of section 32 above, and that the committee did nothing more than fill that vacancy. We are unable to appreciate the subtle re-

finement of reasoning which would justify such a conclusion. If at the time of his death Mr. Miracle was a candidate for state senator, then his death created a vacancy which the committee could fill. If he was not such a candidate, then his death created a vacancy in the office of state senator, but not a vacancy in the candidacy of the Republican nominee. Mr. Miracle was elected to office on November 5, and when the polls closed on that day he ceased to be a candidate.

Many of the provisions of the primary election law are crudely drawn, and some of them are almost unintelligible, but we believe that the construction we have given the Act expresses the intention of the people in enacting it.

For the reason that the committee has not any authority under the primary law or other statutes to make an original nomination, as was attempted in this instance, the motion to quash the alternative writ is sustained, and it is ordered and adjudged that plaintiff take nothing, and that defendant recover his costs.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE PIGOTT concur.