## CHARLES SCRIBNER'S SONS v. BOARD OF EDUCATION OF DIST. NO. 102, OF COOK COUNTY, ILL., et al.

(Circuit Court of Appeals, Seventh Circuit. August 20, 1921. Rehearing Denied November 22, 1921.)

No. 2981.

1. **Constitutional law ⬳276—Schools and school districts ⬳167—Illinois Text-Book Law held constitutional.**

Illinois Text-Book Law, in force July 1, 1917 (Laws 1917, p. 754), while it contains provisions which, standing alone, might be an invasion of the constitutional right to contract, taken in its entirety and construed in view of its purpose, is limited in its application to the sale and purchase of books for actual use in the public schools of the state, and as so limited is constitutional and valid.

2. **Schools and school districts ⬳80(1)—Filing of list of text-books by publisher and giving bond constitutes contract to furnish books adopted during its term.**

Under Illinois Text-Book Law, in force July 1, 1917 (Laws 1917, p. 754), which requires publishers desiring to sell books for use in the public schools to file with the state superintendent of public instruction a list of their books, with prices, and to give a bond conditioned that it will furnish any of such books as required during a term of five years at the list price, and requires the superintendent to furnish copies of such list to the authorities of each school district in the state who may adopt therefrom such books as they desire, the filing of such list by a publisher and the giving of the bond is not a mere offer, which may be withdrawn at will, but constitutes a contract binding it to furnish such books as may be adopted by a district during the term.

3. **Schools and school districts ⬳81(1)—"School district" and "school corporation" defined.**

Under Illinois Text-Book Law, § 1, subd. 2 (a) (Laws 1917, p. 754), providing that, before any person shall offer any school text-books for

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

adoption, sale, or exchange, he shall file a bond conditioned that he will furnish, for a period of five years, the books listed in accordance with the act, and at the list prices, to any "school district" or "school corporation" in the state, the term "school district" has reference to the public school system, and "school corporation" means boards of education and other public school corporations, if any there are, existing under public or private laws of the state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, School District; Second Series, School Corporation.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by Charles Scribner's Sons, a corporation, against the Board of Education of District No. 102 of Cook County, Ill., and others. Decree for defendants, and complainant appeals. On petition for rehearing, after entry of order of affirmance without opinion. Denied.

William Rothmann, of Chicago, Ill., for appellant.

Clarence N. Boord, of Springfield, Ill., for appellees.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

PER CURIAM. Affirmed, without opinion.

## On Petition for Rehearing.

Appellant, a publisher of school text-books, brought its action against the state superintendent of public instruction of Illinois and against the board of education of school district No. 102, Cook county, Ill., to restrain enforcement against appellant of the provisions of the Illinois Text-Book Law entitled "An act to regulate the adoption, sale and distribution of school text-books," In force July 1, 1917 (Laws 1917, p. 754). The bill shows that in respect to those provisions thereof which require appellant to supply listed school text-books, when listed in accordance with the act, at the list prices for the five year period as in the act provided, under the terms of the act, appellant, in 1917, duly filed with the state superintendent its bond and its list of school text-book publications as by the act required, that adoptions of some of such publications were made by certain school districts in Illinois, and that said school district No. 102 had recently adopted a certain book from such list, and was insisting upon being supplied with same. The bill further alleges that, owing to war conditions, there has come about a very great increase in the cost of everything which enters into their production, so that such books could not be sold at the list prices, except at great loss to appellant, and while appellant signified its willingness to complete its undertaking to furnish books at list prices for the statutory period where adoptions had been made, it was unwilling to accept or comply with the requirements of any further adoptions; that it had notified the state superintendent that it would accept no further adoptions, and that such officer denied its right to refuse compliance with adoptions made during the five-year period covered by the statutory bond filed, and it asked that the state superintendent of public instruction be restrained from enforcing such bond or any of the penalties in the act prescribed, as to any adoptions that might be made after its said notice to the state superintendent.

The bill charges that the act transgresses the Fifth and Fourteenth Amendments to the federal Constitution and also section 8 of article 1 thereof, and is therefore unconstitutional and void. Appellant contends that the act is so broad that it unwarrantably restricts and interferes with appellant's right to contract for and sell its school text-books to schools other than public-schools of the state, or to persons generally, except it be in the manner specified in the

act and at the prices fixed as in the act provided, and that such restriction deprives appellant of property without due process of law, abridges appellant's rights and immunities, denies it equal protection of the laws, and unwarrantably interferes with interstate commerce. On motion of appellees the court dismissed the bill for want of equity.

ALSCHULER, Circuit Judge (after stating the facts as above). [1] The title of the act and some of its provisions considered alone may be broad enough to warrant the interpretation contended for. Section 1 provides that no person shall offer any school text-book for adoption, sale, or exchange in the state until he has complied with the act. Section 7 makes it unlawful for a dealer to sell the books listed in accordance with the act, at a price to exceed 15 per cent. advance of the net listed price. But does a fair consideration of the whole act and the evils it was designed to relieve require so inclusive an interpretation of these portions of it? The Illinois Constitution (article 8, § 1) requires the General Assembly to "provide a thorough and efficient system of free schools, whereby all children of the state may receive a good common school education," and the statutory enactments to that end have been and are many and voluminous. Among them there have been acts preceding the act in question, respecting text-books to be used in the public schools. Long prior to the last enactment it was well understood or at least generally believed that great abuses had grown up in the adoption and supplying of public school text-books; that prices were often extortionately high, and that changes in the books were made with scandalous frequency, with resultant undue burden upon parents who had to supply them. It was against such supposed conditions that legislation was from time to time directed, the last enactment being this law. When we consider the evil at which the act is leveled as one existing in connection with the public school system only, we should be more ready to look to the whole act to learn whether it may not appear limited to books to be actually used in the public schools of the state. It seems that the official named in the act for receiving the lists of publications and prices, fixing the amount of the bonds and approving same, and repeatedly named in the act as the one official charged with its application and operation and enforcement, is the state superintendent of public instruction, a constitutional officer, whose very title indicates that the general nature of his duties is with reference to public instruction alone.

[3] Section 1, subd. 2 (a), makes provision for a condition in the bond that for the indicated period the books be supplied "to any school district and any school corporation in the state of Illinois," etc. The term "school district" clearly has reference to the public school system with which alone the "school districts" have to do, and "school corporation" evidently means boards of education and such other public school corporations, if any there are, existing under public or private laws of the state. Section 3 provides for sending by the state superintendent copy of such lists "to the school authorities in each district in the state," and section 4 makes it "the duty of the board of education, or the board of directors of each school district of the state" to notify the superintendent of violations of conditions of the bonds. Section 5 is directed against rewards or promises thereof, in securing

adoption of "any school text-book in any school district in this state" or any inducement "to any teacher or school officer in any school district." In section 6 it is provided that—

"Boards of education or boards of school directors are empowered, and it shall be their duty to adopt such text-books listed under the provisions of this act needful for use in said schools, * * * and said books shall be used exclusively in all public high schools and elementary schools of the state for which they have been adopted."

Section 8 states that "school districts are hereby authorized to purchase * * * text-books from the publishers at the prices listed * * * and to sell said books to the pupils, * * *" and section 9 provides that "school districts are * * * authorized to purchase" the listed school text-books, and to designate retail dealers to act as the agent of the district in selling the books to pupils and to "make settlement with the district for such books," and that such dealers shall not sell the books at an advance of more than ten per cent. Section 11 provides that "when a family removes from one school district to another within the state, the clerk of the district may purchase * * * text-books in actual use by the children of the family," and resell them to other pupils coming into the district. In no part of the act is there any intimation of its application to schools other than the public schools, or to dealing in or selling such books, otherwise than in connection with the public schools, except as this might be inferred from the wording of the title and of sections 1 and 7 referred to. The state had undoubted power to make regulations concerning the sale of the text-books to be for use by the pupils of its free schools, even to the extent of the state itself producing and providing them. It seems equally clear that it had no power to regulate the sale of such books for use elsewhere than in its public schools, or for others than the pupils thereof.

Viewed in the light of the supposed conditions to be relieved by this legislation, the power of the state over the subject-matter, and the numerous provisions to be found in the act referable only to a legislative intent that it have application only to the sale and purchase of books for actual use in the public schools of the state, we conclude that the act itself was not intended to have, and does not have further scope. So limited it is not subject to the constitutional objections urged against it.

[2] It is the further contention that the listing of the books and prices is but an offer to contract, and may be withdrawn by the publisher at any time before acceptance through adoption by school districts. Appellant's counsel seem to treat the statute as though it made provision only for the offering of text-books for sale. If so limited the act would avail little or nothing. The title covers the subject of adoption, sale, and distribution. The bond provided for is conditioned that the person filing it shall furnish for five years any of the books listed, at the stated prices, to any school district or corporation in the state. It is made the duty of the state superintendent to publish the lists and distribute them to all the public school authorities, who may make adoptions only from such listed books. Cases cited on the sub-

278 F.—24

ject of unrelated and option contracts have no application where, as here, the statute clearly intends that one filing the bond and lists shall be obligated to supply the books as adopted during the statutory period.

The petition for rehearing of the order of affirmance heretofore made herein is denied.