BOX ET AL., RESPONDENTS, v. DUNCAN, SUPERINTENDENT OF SCHOOLS, ET AL., APPELLANTS.

(No. 7,370.)

(Submitted November 10, 1934. Decided December 6, 1934.)

[38 Pac. (2d) 986.]

*Mr. Frank E. Blair,* for Appellants, submitted a brief and argued the cause orally.

*Mr. James A. Flint,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment of the district court of Madison county annulling the action of the board of county commissioners of that county, whereby it attempted to consolidate the high schools located at Pony and Harrison. The case was tried below upon an agreed statement of facts. The town of Pony, Montana, is situated in School District No. 11, which has been in existence many years. It has kept and maintained a public high school at Pony. Since the year 1917, the Harrison District No. 23 has kept and maintained a public high school. This high school is located at the town of Harrison. Both high schools have been maintained with suitable buildings, equipment, and facilities, such as to entitle them to be recognized as accredited high schools.

On March 7, 1934, the board of county commissioners of Madison county at one of its regular meetings ordered the consolidation of the high school at Pony with the high school at Harrison. It ordered that the consolidated high school should be established and maintained at Harrison. As far as the record discloses, the board made this order of consolidation upon its own motion, without petition or other proceedings by or on behalf of either of the school districts or any of the residents thereof. Thereafter, on March 28, 1934, the order of the board was approved by the state superintendent of public instruction.

On June 18, 1934, the trustees of the Pony district filed an action in the district court of Madison county and named as defendants the county superintendent of· schools, the county treasurer, the board of county commissioners, the trustees of the Harrison district, and the board of school budget super-

visors of Madison county. They alleged that all the named defendants threatened and proposed giving effect to the order of consolidation made by the board of commissioners, and would do so unless restrained from so doing and ordered to do otherwise.

After consideration of the matter upon the agreed statement of facts, the district court made the following order: "It is ordered and adjudged that a peremptory writ of mandate issue commanding each and all of the defendants above named to forthwith take all steps and do all things necessary and within their respective power and authority to maintain a public high school within each of said school districts numbered 11 and 23." Defendants have appealed from the judgment entered upon that order.

Obviously, the only question for determination here is whether the order of consolidation made by the board of county commissioners, and subsequently approved by the state superintendent of public instruction, was valid and controlling.

In ordering the consolidation, the board of commissioners purported to act in accordance with, and under the authority of, Chapter 148, Laws of 1931. The title of that Act reads as follows: "An Act to Establish a Uniform Code of Laws Relative to High Schools as a Part of the Public School System of the State of Montana and to Repeal all Acts and Parts of Acts in Conflict Herewith. * * * "

Section 95 of the Act provides as follows: "Whenever it shall appear to the board of county commissioners to be for the best interests of any two or more high schools in the county and for the high school system in the county as a whole to effect a consolidation of such high schools it shall have the power and authority to effect such consolidation and to determine all questions involved in effecting such consolidation, provided, however, that before such consolidation shall become effective it shall be approved by the State Superintendent of Public Instruction."

This section, standing alone, would seem to authorize and sustain the action of the board of commissioners in the instant

case. Its provisions, however, must be considered in connection with other statutes relating to the same general subject.

Section 1023, Revised Codes 1921, as amended by Chapter 18, ▮▮▮▮ Laws of 1923, provides as follows: "No school district shall be created, nor boundaries changed, between March 1st and July 1st of any calendar year." This statute was not included among the numerous sections which were specifically repealed in the repealing clause of Chapter 148, supra. If its repeal was accomplished in that Act (Chap. 148), it could have been done only through the general repealing clause, "all Acts and parts of Acts in conflict herewith, or with any part hereof, are hereby repealed." Repeal of a statute by implication is not favored by the courts. (*State ex rel. Metcalf* v. *Wileman,* 49 Mont. 436, 143 Pac. 565; *Penwell* v. *Board of County Commrs.,* 23 Mont. 351, 59 Pac. 167; *State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362; *State ex rel. Wynne* v. *Quinn,* 40 Mont. 472, 107 Pac. 506.)

To make tenable the claim that an earlier statute was repealed by a later one, the two Acts must be plainly and irreconcilably repugnant to, or in conflict with, each other; must relate to the same subject; and must have the same object in view. (*State ex rel. Metcalf* v. *Wileman,* supra; *Jobb* v. *Meagher County,* 20 Mont. 424, 51 Pac. 1034; *State ex rel. Esgar* v. *District Court,* 56 Mont. 464, 185 Pac. 157; *Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062.) "Legislative intent to change the effect of statutes by codification must appear clearly, before the court will adjudge a change." (*Missoula County Free High School* v. *Smith,* 91 Mont. 419, 8 Pac. (2d) 800, 803.)

In the ascertainment of the legislative intent with respect to the possible repeal of the old section 1023, it is important and somewhat persuasive to take into consideration the fact that the legislature itself evidently did not understand that the section was repealed. At the next regular session held in 1933, an Act was introduced and passed as an amendment to the old section. That Act is Chapter 37 of the Laws of the Twenty-

third Legislative Assembly. The title and body of the Act read as follows:

"An Act to Amend Section 1023, of the Revised Codes of the State of Montana of 1921, as Amended by Chapter 18, of the Session Laws of the Eighteenth Legislative Assembly of Montana, 1923, Relating to Limitations in Connection with the Creation of School Districts or Changing the Boundaries Thereof.

"Be it enacted by the Legislative Assembly of the State of Montana:

"Section 1. That Section 1023, of the Revised Codes of the State of Montana of 1921, as amended by Chapter 18, of the Session Laws of the Eighteenth Legislative Assembly of Montana, 1923, be, and the same is hereby amended to read as follows:

"'Section 1023. No school district shall be created nor boundaries changed between March 1st and July 1st of any calendar year, and no school district nor any portion of any school district shall be included in the petition for the consolidation of school districts or for the changing of boundaries of school districts more than once during one calendar year.'
\* \* \*

"Approved February 25, 1933."

It will be observed that while the enactment purports to be an amendment of an existing law, it is sufficiently comprehensive in both title and text to meet all the requirements necessary to the sufficiency of an ordinary bill. The reference to the old section may be eliminated, and still the Act is a perfect bill for the enactment of new legislation. This new Act was in effect at the time of the attempted action now under consideration.

If the order of the board in its ordinary and reasonable effect would result in an invasion of the territorial integrity of the existing districts, or in the creation of a new district, within the meaning of the above statute, it was clearly void as having been made out of time. It then becomes important to consider what is meant by the term "school district," and

222

whether the attempted consolidation of the high schools did really affect the districts.

Section 1020, Revised Codes 1921, defines a school district to be "the territory under the jurisdiction of a single board, designated as board of trustees." It is clear that the term "school district" has reference solely to the public school system. (*Charles Scribner's Sons* v. *Board of Education,* (C. C. A.) 278 Fed. 366.) Obviously, the only purpose of a school district is to designate a certain territory within which a public school or schools may be established and maintained. The section quoted clearly contemplates the establishment of a school within the district as being essential to the very existence of the district itself. The kind of school that is thus contemplated is spoken of in the laws upon this subject as a "public school." Such a school is defined by statute to be "a school established and maintained under the laws of this State at public expense and comprising the elementary grades, and, when established, the kindergarten and the high school including all the junior and senior grades of high school work." (Sec. 1053, Rev. Codes 1921, as amended by Chapter 72, Laws of 1931.) In accordance with this statute, a high school, when it is established, becomes an integral part of the public school system in that particular district. It is under the jurisdiction of the same board of trustees as the elementary grades or any other department of the public school system existing in that particular district. (Sec. 1, Chap. 148, Laws of 1931.)

In the instant case, both districts are corporations. (Sec. 1022, Rev. Codes 1921; *State ex rel. School District No. 4* v. *McGraw,* 74 Mont. 152, 240 Pac. 812.) The high school at Pony is a part of the school system of that corporation. The board of county commissioners proposed to take away from the district of which that high school is a part, a portion of its property (income derived from taxes and physical school property and equipment of the Pony high school), and to give that property to another corporation—the Harrison school. In effect, the order did create a new school district, in so far as high school activities are concerned. The practical result

of the order is that the elementary school at Pony is retained under the jurisdiction of the Pony school board. The elementary school at Harrison is likewise continued under the jurisdiction of the Harrison school board. A new high school district was in effect created to take in both the Pony and the Harrison school districts.

The law under which the board acted and the order do not assume to create a new district or to change boundaries. Neither do they attempt to set up any organization for the control of the new high school district or the administration of its affairs. While it may not be necessary to the decision in this case to advert to the fact, it still remains a fact that the jurisdiction of the Harrison school board was, of necessity, extended over the Pony school district for the purpose of administration of the consolidated high school; otherwise the new high school would manifestly be left without officers. Certainly the board of trustees of the Pony school district could not assume to exercise any jurisdiction beyond the confines and affairs of that district.

It is interesting to note that the reasonable result of the attempted consolidation would be that the people living in the Pony district would not only lose their high school, with the incidental income for the support thereof, but be denied the right to participate in the selection of trustees or to otherwise have any voice or vote in the conduct or operation of the consolidated high school. At the same time, they would be compelled to continue the payment of their proportionate share of taxes for its maintenance. It seems to us that such a situation would constitute a rather extreme instance of taxation without representation. It is not likely that any such situation was ever contemplated by the lawmakers.

We do not assume to say, for the purposes of this opinion, that the results we have mentioned have any controlling effect in the decision of this appeal. We are of the opinion that the procedure employed by the board does come substantially within the prohibition of Chapter 37 of the Laws of 1933, in that it has the effect of consolidating the two school districts,

at least for high school purposes. We see no reason or justification for the application of any different rule with respect to the consolidation of integral parts of the two systems from that applicable to a consolidation of the districts *in toto*. The board having acted out of time its action was void and of no effect.

The judgment of the district court is accordingly affirmed.

MR. CHIEF JUSTICE CALLAWAY: I concur in the result, but am not satisfied to rest the decision of the case wholly on the provisions of section 1023, Revised Codes 1921, as amended by Chapter 18, Laws of 1923.

In my judgment, the legislative assembly by the enactment of section 95 of Chapter 148, Laws of 1931, did not intend to confer upon the board of county commissioners any such arbitrary power as a casual reading of that section might indicate. Rather, it seems to me that the lawmaking body must have had in contemplation such other sections of the school law as are *in pari materia* with that section, and the rule that such statutes must be construed together, all thereof being given effect if it be possible to do so.

Chapter 148 contains section 37, which provides that whenever the interests of any school district require it, the board of trustees of the district, with the approval of the superintendent of public instruction, may establish a high school and make the necessary provision for its quarters, equipment, and teaching force in the manner provided in the section next following. This may be done without reference to the authority of the board of county commissioners. And yet the board of county commissioners, if they are given the arbitrary power indicated in section 95, may immediately consolidate the new high school with another, subject only to the approval of the state superintendent of public instruction; no provision being made respecting quarters, equipment, and teaching force which the trustees have supplied for the newly created high school.

Moreover, while many sections of the Revised Codes of 1921 and of Session Acts are repealed by section 111 of Chapter

148, section 1034, Revised Codes 1921, which provides for the consolidation of two or more school districts, either by the formation of a new district, or by the annexation of one or more districts to an existing district, and which prescribes the procedure in the event of such consolidation, was permitted to stand unchanged. Section 1034, supra, provides for the consolidation of districts pursuant to notice given to the people and after a vote of the electors affected thereby. It provides also for trustees to serve the consolidated district, for the vesting of title to schoolhouses and sites in the newly consolidated district, and makes provision that bonded indebtedness in any district merged by consolidation shall be assumed by the consolidated district. And section 110 of Chapter 148 provides that "all high schools of the State shall be regulated and governed by the general school laws of the State in any case for which provision is not made in this code."

Again, it is difficult to believe that the legislators intended to confer upon the county commissioners the arbitrary power indicated in section 95, for they must have foreseen that a result comparable to that which is presented in this case inevitably would occur. We have here two public corporations, the Harrison district and the Pony district, each maintaining a high school. What the commissioners assumed to do was not to create a consolidated district to be governed by trustees chosen from the consolidated district, but to eliminate the Pony high school and to maintain the Harrison high school, which necessarily would be governed by the trustees of the Harrison district to the exclusion of those of the Pony district. This is not in harmony with the provisions of section 1034. The commissioners did not make any provision for the disposition of the property belonging to the Pony high school, nor for the additional burden imposed upon the Harrison district. They made their order without notice to anyone affected by the attempted consolidation. Neither the trustees, the patrons of the school, nor the electors of the respective districts appear to have been consulted.

Conceding that the legislative assembly has plenary power to pass a workable law empowering the board of county commissioners to consolidate high schools, with or without the approval of the superintendent of public instruction, and that the consolidation of high schools is highly desirable in the interests of economy and efficiency, I am persuaded that in view of the general policy governing the schools, as evidenced by the school laws taken as a whole, the law-making body had not the intention to grant the power exercised by the board of county commissioners in this instance.

Section 95 does not contain within itself, nor does it refer to, any procedural directions to carry into effect its purpose; and that such directions will be found necessary cannot well be gainsaid.

It has been suggested that, without nullifying any other provision of the school law, effect can be given to section 95 by holding that the legislature merely designated the board of county commissioners as a tribunal to determine all questions involved in the consolidation of two or more high schools, and to make the order of consolidation in conformity with the law regulating the consolidation of school districts in general. Whether this view can be sustained is not necessary to this decision. The enactment of section 95 has thrown the law respecting the consolidation of high schools into a confusion which should be removed by the legislative assembly which is soon to convene.

ASSOCIATE JUSTICES MATTHEWS and ANDERSON: We concur in the opinion of Mr. Justice Stewart and also in what is said in the special concurring opinion of Mr. Chief Justice Callaway.

MR. JUSTICE ANGSTMAN, dissenting: I cannot subscribe to the reasoning upon which either of the foregoing opinions is based. I think the opinion written by Mr. Justice Stewart is erroneous in holding that the effect of the order in question was to create a new school district. The order specifically denies any such purpose. It in part recites that, ''It is fur-

ther ordered that nothing herein contained shall be construed as a consolidation of the school districts hereinbefore mentioned and described otherwise than a consolidation of the high school systems heretofore and now existing therein as aforesaid.''

The order was in strict compliance with section 95 of Chapter 148, Laws of 1931, which provides as follows: ''Whenever it shall appear to the board of county commissioners to be for the best interest of any two or more high schools in the county and for the high school system in the county as a whole to effect a consolidation of such high schools it shall have the power and authority to effect such consolidation and to determine all questions involved in effecting such consolidation, provided, however, that before such consolidation shall become effective it shall be approved by the State Superintendent of Public Instruction.''

I agree with the rule that a statute must be read and considered in connection with other statutes relating to the same general subject. I think that section 1023, Revised Codes 1921, as amended by Chapter 18, Laws of 1923, and Chapter 37, Laws of 1933, does not relate to the same subject as does section 95 of Chapter 148, Laws of 1931. Section 95 deals only with the matter of consolidating two or more high schools. It has nothing to do with the change of boundaries of districts or the consolidation of two or more districts. That this is so is made plainly apparent when we consider the fact that other statutes, unrepealed by Chapter 148, already made ample provision for changing boundaries of districts (sec. 1024, Rev. Codes 1921, as amended by Chap. 138, Laws of 1927), and for consolidating two or more districts (sec. 1034, Rev. Codes 1921). That these provisions were not repealed by Chapter 148 by implication, seems also to have been understood by the legislature, for in the 1933 session both sections were referred to as existing law (Chap. 163, Laws of 1933), and section 1024, as amended, was further amended (Chap. 175, Laws of 1933). Also this court has made the same assumption. (*Grant* v. *Michaels*, 94 Mont. 452, 23 Pac. (2d)

266.) To now hold that section 95 of Chapter 148, Laws of 1931, relates to changing of boundaries, or the creation of a new school district, is, I think, unwarranted.

Neither do I see wherein section 95 confers arbitrary power upon the board of county commissioners, as stated in the opinion of Mr. Chief Justice Callaway. Its action is subject to the approval of the state superintendent of public instruction. Also, section 37 does not cut down the plain language of section 95. Under section 37, no high school can be established without the approval of the superintendent of public instruction. Should the superintendent of public instruction approve of the establishment of a high school in any district, and there is no change of circumstances, it is entirely probable that approval of its consolidation with another would be withheld under section 95, and the confusion anticipated in the opinion of the Chief Justice would never arise.

It is my view that the order here complained of, made in strict conformity to section 95, simply amounts to a closing of the high school at Pony, and a direction that the pupils attend the school at Harrison. I think the only question before us here is, whether section 95, Laws of 1931, the terms of which are plain, certain, and specific and have been strictly complied with, is a valid legislative enactment. If it is valid, but lacking in wisdom, it must yet be sustained. The invalidity of the statute, and that alone, would warrant us in upholding the judgment of the lower court. Since this question, which I believe is the determinative one, has received no consideration in either of the foregoing opinions, no useful purpose would be subserved in considering it here.

Rehearing denied December 15, 1934, MR. JUSTICE ANGSTMAN dissenting.