STATE ex Rel. FISH AND GAME COMMISSION OF MON-
TANA et al., Relators, *v.* DISTRICT COURT et al.,
Respondents.

(No. 7,871.)

(Submitted September 27, 1938. Decided November 30, 1938.)

[84 Pac. (2d) 798.]

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Mark
H. Derr,* Assistant Attorney General, for Relators, submitted
a brief; *Mr. Derr* and *Mr. B. L. Price* argued the cause orally.

*Mr. H. L. Maury, Mr. A. G. Shone* and *Mr. William B. Frame,*
for Respondents, submitted a brief; *Mr. Shone* argued the cause
orally.

MR. JUSTICE ANGSTMAN delivered the the opinion of the court.

On May 10, 1938, the Fish and Game Commission opened the season on elk in certain parts of Flathead county from September 15th to November 30th. On September 2 certain individuals applied to respondent court for a writ of prohibition restraining the commission from opening the season, and obtained a temporary order restraining the opening of the season earlier than October 15, as provided in section 3696, Revised Codes. The commission, relators here, then applied to this court for a writ of supervisory control to annul the temporary restraining order issued by respondent court.

The proceeding raises the question of the right of the commission to enlarge the open season on elk beyond the provisions of section 3696, which provides that "the open season for elk shall begin October fifteenth (15th) and end November fifteenth (15th) both dates inclusive, of each year. The closed season for elk shall begin November sixteenth (16th) of each year and end October fourteenth (14th) of the following year, both dates inclusive." Section 3696 was last amended in 1931.

The commission bases its right to lengthen the open season on section 3653, which was amended in 1935. That section, as then amended, provides that the commission "shall have authority to fix seasons and bag limits, or shorten or close seasons on any species of game, bird, fish, or fur-bearing animal, in any specified locality or localities or the entire state, when it shall find, after said investigation, that such action is necessary to assure the maintenance of an adequate supply thereof. The statutes now governing such subjects shall continue in full force and effect, except as altered or modified by rules and regulations promulgated by the commission."

To arrive at the legislative intent in making these amendments, it is important to examine the state of the laws as they were prior to the amendments. Section 3681, which has been in effect for many years, defines "open season" as that time when game, birds and fish, and fur-bearing animals may be lawfully taken.

It defines "closed season" as the time when they may not be lawfully taken. Thus, the law now and for many years recognizes two seasons—one the open season, and the other the closed season.

Section 3696 was in full force and effect at the time of the amendments to section 3653. Amongst other provisions it fixed the open season for elk in portions of Ravalli county and then gave the commission authority to "shorten the open season in such territory." It also empowered the commission "to provide limited open seasons" in certain counties designated as the "preserve for elk." It also provided for the open season for elk in Park county and gave the commission authority "to shorten such season and declare said Park county closed to the hunting or killing of elk at any time during the open season."

Section 3696.1, after fixing the open season on elk in Teton county, gave authority to the commission "to shorten such season." By section 3696.4, being Chapter 1, Laws of 1935, which was enacted at the same session as the amendments to section 3653, the open season was fixed in Park county and authority vested in the commission "to shorten such season" and declare it closed "at any time during the open season." Thus, prior to the amendment of section 3653, the legislature was careful to provide that the commission might shorten the "open season."

It is significant that the legislature in the amendment of section 3653 did not limit the commission's authority to fix "open seasons," nor did it limit the commission to the power to shorten "open seasons." From the broad language used in the amendment, it must have been the intention of the legislature to authorize the commission to shorten "closed seasons" as well as "open seasons." To shorten a closed season necessarily lengthens the open season.

We can understand that in certain areas it might be necessary to have some elk killed in order to assure sufficient forage for those remaining. The legislature, by the broad language of the amendment, evidently intended to place the entire matter in the hands of the commission. This conclusion is strengthened by the fact that the legislature still continued in the Act as

amended the clause, "Said commission shall, in addition to the powers heretofore granted, have such other and further powers as may be necessary to fully carry out the purpose and intent of all the laws pertaining to fish, game, and fur-bearing animals, game and non-game bird propagation, protection, conservation and management of this act; * * * ."

The fact that statutes fix the seasons on elk is not of controlling moment, because section 3653 expressly provides that "the statutes now governing * * * shall continue in full force and effect, except as altered or modified by rules and regulations promulgated by the commission." It is plain that the legislature intended to give the commission authority to adopt rules and regulations amounting to a modification of existing statutes.

The act authorizes the action of the commission complained of; hence the restraining order was improper. The writ applied for will issue to annul the restraining order and to direct the respondent court to dismiss the proceedings before it.

MR. CHIEF JUSTICE GODDARD and ASSOCIATE JUSTICES ANDERSON and STEWART concur.

MR. JUSTICE MORRIS, Dissenting:

This controversy involves the interpretation and construction of the Fish and Game statutes. May 10, 1938, the State Fish and Game Commission adopted and promulgated a resolution opening the season on elk in certain parts of Flathead county and authorizing the killing of elk from September 15 to November 30, both dates inclusive. Counsel for the commission contend that the commission was duly authorized to adopt and promulgate the resolution of May 10th by reason of that part of section 3653 of Chapter 307, Revised Codes, which provides: "It [the commission] shall have authority to fix seasons and bag limits, or shorten or close seasons on any species of game, bird, fish, or fur-bearing animal, in any specified locality or localities or the entire state, when it shall find, after said investigation, that such action is necessary to assure the maintenance of an adequate supply thereof. The statutes

now governing such subjects shall continue in full force and effect, except as altered or modified by rules and regulations promulgated by the commission.''

Chapters 307 and 308 contain the Fish and Game laws of the state and all regulations relative thereto. Section 3653 of Chapter 307 contains the controverted provision. The section covers more than two and a half pages of the Codes, and no specific reference is made to elk therein. The section, however, refers to ''game'' which, of course, includes elk, but the chief purpose of the section appears clearly to be the creation of the commission, provides for its personnel, duties and functions, and an elaboration of its general powers relative to all game, game birds and fish, the acquisitions of lands and waters suitable for propagation of fish and game birds, and non-game birds, but without any specific details relative to the powers granted as to the protection, hunting or killing of any species of wild life. The chapter following, 308, provides the details and prescribes certain limitations upon the general powers granted by the prior chapter. Chapter 308, section by section, prescribes the various species of game, game birds, fish and fur-bearing animals that may be killed, taken or trapped, names the kind of game animals that may be killed and fixes the seasons, adding provisos in many instances vesting certain powers in the commission to make specific changes in the seasons within prescribed limits.

Sections 3696 to 3696.6, inclusive, apply to elk exclusively, and these sections contain all the laws of Montana specifically relating to the killing of elk, or in which the word ''elk'' appears. This should be sufficient to support the conclusion that the only statutory provisions applicable to the controversy here must be found in the sections just named.

The two Chapters, 307 and 308, with their numerous sections and provisions give expression to the purpose and intentions of the legislative body relative to the protection, propagation and perpetuation of wild life in the state and, obviously and in so far as it was deemed practical, made specific regulations, as, for instance, in the hunting or killing of elk, but in order to permit elasticity in the enforcement of the regulations as prescribed

294

by statutes, appended to many statutes provisos giving the commission discretionary power to alter or modify the enforcement of the statutes to meet the changing conditions that might arise during periods when legislative action could not be had.

If the quoted part of section 3653, on which the commission relies to support its resolution of May 10, be construed as contended for by the commission, it necessarily abrogates and nullifies all open and closed seasons specifically provided for in sections 3696 to 3696.6, which deal specifically with the closed and open seasons on elk. The open season provided by section 3696 for the state at large begins October 15 and closes November 15, both dates inclusive. Any open season fixed other than this in any statute for any part of the state is by proviso to some one of sections 3696 to 3696.6.

In section 3696, immediately following the state-wide open season dates, a proviso fixes the open season in certain parts of Ravalli county from September 20 to October 20, and further provides, ''The state fish and game commission may in its discretion *shorten* the open season in such territory in Ravalli county.'' In the same paragraph a ''preserve for elk'' is made of a large number of counties enumerated in the next succeeding paragraph, and elk may not be killed in any of such enumerated counties but ''the same to remain closed until opened by the state legislature, or by order of the state fish and game commission, which commission is hereby authorized to provide limited open seasons in such counties and for such areas as in its judgment is warranted and to provide necessary rules and regulations governing such limited open seasons.'' This is the only provision of the statutes that expressly vests the commission with authority to open the season in any part or parts of the state which the statutes have provided shall be closed. All other provisos or exceptions to the seasons as fixed by statutes are to the effect that the commission or warden may, at discretion, *shorten* or *close* the open season as fixed by statute, but in no instance does the statute specifically authorize the commission or warden to lengthen any season fixed by statute.

In the third paragraph of section 3696 it is provided that the open season shall begin November 1 and close November 15 in certain parts of Lewis and Clark county. By paragraph four, portions of Missoula and Powell counties appear to be included under the provisions relating to Lewis and Clark county by reason of the paragraph beginning with, "also all of Missoula and Powell counties, except," etc. Paragraph seven fixes the open season in Park county to begin October 15 and end December 20, "except that the state fish and game warden shall, in his discretion, have power to *shorten* such season and declare said Park county closed to the hunting or killing of elk at any time during the open season in Park county." By Chapter 123, Laws of 1933, now section 3697.2, the open season for Park county was extended from December 20 to January 10, and by Chapter 1, Laws of 1935, now section 3696.4, the legislature fixed the open season for Park county to begin October 15 and end March 1, with the proviso that "the Montana state fish and game commission shall, in its discretion have power to *shorten* such season in said territory and declare said territory closed to the hunting or killing of elk at any time during the open season * * * ." This provision for killing elk in Park county is an Act of the legislature enacted at the same session at which the amendment was made to section 3653, which the commission contends vested it with authority to "fix open season on elk." I am at a loss to determine why the legislature bothered about fixing either open or closed seasons on elk if the quoted part of section 3653 vests in the commission power to fix seasons at will.

Section 3696.1 provides for an open season on elk in certain parts of Teton and Lewis and Clark counties to begin October 15 and end December 1, with a proviso that "the Montana fish and game warden shall in his discretion have power to *shorten* such season in said territory and declare said territory closed to the hunting or killing of elk at any time during the open season therein." In each instance where power by statute is vested in the commission or the warden to shorten or close a season, published notice thereof is required. The last provision

mentioned relative to Teton and Lewis and Clark counties is the only instance wherein the warden is empowered to act. In all others mentioned, the power is vested in the commission to shorten or close the open season.

It will be noted that in each instance, except as to the "preserve for elk" counties heretofore mentioned, no express power is vested in either the commission or the warden to do anything more than *shorten* or *close* the open season as fixed by statute. No provision appears in any statute authorizing anyone to lengthen an open season unless that provision in section 3653, upon which the commission predicates its authority to adopt and promulgate the resolution of May 10, grants such authority.

Counsel for the commission contend that the 1935 amendment to section 3653 repeals, or at least modifies, by implication, the express provisions I have enumerated above relative to the open seasons. "In the enactment of any law the legislature is presumed to proceed having in mind the existing law." (*In re Wilson's Estate*, 102 Mont. 178, 194, 56 Pac. (2d) 733, 737, 105 A. L. R. 367.) If the legislature intended by the 1935 amendment to section 3653 to vest the power in the commission to "fix seasons" on elk at will and irrespective of all the existing statutory provisions I have enumerated relating to that subject, it would appear that the logical procedure would have been in order to bring about such a radical departure from the established law, to expressly amend some of that group of sections in Chapter 308, which deal exclusively with the hunting and killing of elk, instead of incorporating such amendment in a section dealing with wild life in general, and in which the word "elk" does not appear either in the original law or in the amendment.

It is important at this point to consider the established rules of statutory construction. It must be remembered that in any enactment "the general design and purpose of the law is to be kept in view and the statute given a fair and reasonable construction with a view to effectuating its purpose and object." (25 R. C. L., p. 1013, sec. 253; *Bowers* v. *Smith*, 111 Mo. 45, 20 S. W. 101, 33 Am. St. Rep. 491, 16 L. R. A. 754.) I do not

agree with counsel for the commission or my associates that the 1935 amendment to section 3653 repeals any part of section 3696. "Repeal of a statute by implication is not favored by the courts." (*Tipton* v. *Sands*, 103 Mont. 1, 60 Pac. (2d) 662, 668, 106 A. L. R. 474; *Box* v. *Duncan*, 98 Mont. 216, 38 Pac. (2d) 986; *State ex rel. Metcalf* v. *Wileman*, 49 Mont. 436, 143 Pac. 565; *Penwell* v. *Board of County Commrs.*, 23 Mont. 351, 59 Pac. 167; *State ex rel. Hay* v. *Hindson*, 40 Mont. 353, 106 Pac. 362; *State ex rel. Wynne* v. *Quinn*, 40 Mont. 472, 107 Pac. 506.) "To make tenable the claim that an earlier statute was repealed by a later one, the two acts must be plainly and irreconcilably repugnant to, or in conflict with, each other." (*Box* v. *Duncan*, supra, 38 Pac. (2d) 987; *Jobb* v. *Meagher County*, 20 Mont. 424, 51 Pac. 1034; *State ex rel. Esgar* v. *District Court*, 56 Mont. 464, 185 Pac. 157; *Equitable Life Assur. Co.* v. *Hart*, 55 Mont. 76, 173 Pac. 1062.) "It is not enough to justify the inference of repeal that the later law is different. It must be contrary to the prior law. * * * There must be positive repugnancy. * * * If, by fair and reasonable interpretation, Acts which are seemingly incompatible or contradictory may be enforced and made operative in harmony and without absurdity, both will be upheld, * * * . As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable." (*Jobb* v. *Meagher County*, supra.)

I find no irreconcilable conflict or repugnancy between the controverted provision in section 3653 and the provisions of 3696. In my opinion, any such provisions as that of section 3653 alleged to repeal or conflict with the provisions of other parts of the Fish and Game laws must be construed as powers to be exercised by the commission within the express limitations of other sections of the Fish and Game statutes. In other words, the powers of the commission must be exercised within the limits

prescribed by Chapters 307 and 308, supra. I think that where the legislature has spoken, the commission or warden is without power to establish rules and regulations to the contrary. Statutory boards and commissions derive all their power from express law, and the commission here, like a board of county commissioners, "may exercise only such powers as are expressly conferred upon it or which are necessarily implied from those expressed, and * * * where there is a reasonable doubt as to the existence of a particular power, * * * it must be resolved against the board, and the power denied." (*Lewis* v. *Petroleum County,* 92 Mont. 563, 17 Pac. (2d) 60, 86 A. L. R. 575, and cases cited.)

If the open and closed seasons for hunting and killing elk can be changed at will by the commission, then all the provisions of the statutes heretofore mentioned expressing the will of the legislature as to open and closed seasons and bag limits can, at any time, be abrogated and annulled by the commission. It appears to me that if the commission can change the seasons on elk, except within the express provisions of the statutes, the commission could also disregard the limit of one elk per person per season, as fixed by section 3696.5, and authorize the killing of such number as the commission may choose. This, I think, would result in an absurdity and I find nothing in the statutes on Fish and Game which may be reasonably construed to justify the exercise of such power by the commission.

Another firmly established rule of statutory construction is that statutes relating to the same subject must be considered and construed as a whole. "Counsel for appellants directs his attacks to the provisions of section 7189, and it may be true that, if that section be segregated from the other portions of the statute and considered alone, some basis might be found for the contention advanced, but the statute consists of numerous sections, all relating to the same general subject, * * * and it is an elementary rule of statutory construction that, in ascertaining the intention of the Legislature the statute must be considered in its entirety." (*In re Crow Creek Irr. Dist.,* 63 Mont.

293, 207 Pac. 121, 122, see, also, *State ex rel. Snidow* v. *State Board of Equalization*, 93 Mont. 19, 17 Pac. (2d) 68, 18 Pac. (2d) 804; *State ex rel. Malott* v. *Board of County Commrs.*, 89 Mont. 37, 296 Pac. 1; *Drake* v. *Schoregge*, 85 Mont. 94, 227 Pac. 627, and cases cited; *State ex rel. Smith* v. *Duncan*, 55 Mont. 376, 177 Pac. 248.)

Another fact that tends to reveal the intention of the legislature in the premises: House Bill 149 was introduced in the 1937 session of the legislature, giving to the commission the exact power it assumed to exercise under the provisions of section 3653, as amended, when the resolution of May 10 was adopted. After extended consideration in both the House and Senate, the bill was killed. Petitioners contend that this clearly expressed the intention of the legislature to keep within its own hands the fixing of seasons on elk, except when provision is made to shorten or close the season as fixed by statute. Counsel for the commission, on the contrary, contend that it is evidence that the legislature believed the law already vested such power in the commission and the enactment of House Bill 149 was unnecessary. I think the sounder reasons in this contention are on the side of the petitioners. If the legislature believed the commission was already vested with the power which House Bill 149 proposed to give it, the reasonable course to pursue would have been to enact the bill into law and avoid any controversy over the meaning of the existing law.

It is argued with some force that the obligations imposed upon the commission to protect and preserve elk herds carry with them the discretionary power to do such things as are necessary to perform such obligations, and that the poor range conditions in the area involved rendered it necessary to reduce the herds in that locality, and that the adoption of the resolution of May 10 was in line with such purpose. The Fish and Game laws make it incumbent upon the commission to protect, preserve and perpetuate wild life in Montana, and killing of elk in order to preserve the herds of the state is not, in my opinion, within the purview of the statutes. If the legislature desired to vest

in the commission such power to meet any such emergency, the wise course to pursue is to wait until the legislature makes such desire known in more specific terms than are found in any of the provisions now in the Fish and Game laws.