No. 12407

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

LLOYD BARNARD,

Plaintiff and Appellant,

-vs-

IRMA McINERNEY, EARL DALEY, HOWARD
CORNWELL and JOHN MAXNESS,

Defendants and Respondents.

---

Appeal from: District Court of the Seventeenth Judicial District,
Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Morrison, Ettien and Barron, Havre, Montana
J. Chan Ettien argued, Havre, Montana

For Respondents:

Gordon T. White, County Attorney, Glasgow, Montana
Francis Gallagher argued, Special Assistant County
Attorney, Glasgow, Montana
Lawrence Miyasato argued, Deputy County Attorney,
Glasgow, Montana.

---

Submitted: May 30, 1973

Decided: JUN 2 1 1973

Filed: JUN 2 1 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from denial of a writ of mandamus to compel Valley County Commissioners and School Superintendent to allow joinder of territory from Hinsdale High School District in Valley County, to Saco High School District in Phillips County.

Saco Elementary School District 12A is a joint elementary district located in Phillips County and Valley County. The school is in Saco, which is in Phillips County. Residents of the Valley County portion of Saco Elementary District 12A have for many years also sent their high school students to Saco, though their territory is a part of Hinsdale High School District 7C, whose high school is in Hinsdale, part of Valley County. Valley County pays such students' tuition to the Saco High School.

Plaintiff Lloyd Barnard and a majority of his fellow residents of the Valley County portion of the Saco Elementary District 12A, being qualified under the provisions of sections 75-6525 and 75-6526, R.C.M. 1947, petitioned the Valley County Superintendent for transfer of their portion to the Saco High School District, stating their reasons for the boundary changes. That petition states:

> "Petitioners request that the above described lands be joined to Saco High School District #12B to form a joint High School District under the provisions of Section 184 (75-6525) and 185 (75-6526) of Senate Bill No. 1, 42nd Montana Legislative Assembly, for the following reasons:
>
> "1. Petitioners are residents, taxpayers and voters within the above described territory.
>
> "2. There is no high school in Hinsdale High School District within three (3) miles of the above described territory.
>
> "3. The taxable value of the above described territory is about $321,000.00.
>
> "If this petition is granted, the remaining taxable value of Hinsdale High School District would be approximately $2,000,000.00.

"Increased costs to all of the taxpayers of the remaining Hinsdale District would be about two and one-fourth (2 1/4) mills, and there would be no hazard to its continued operation.

"Valley County would be relieved of paying yearly tuition to Saco High School District at the rate of $300.00 per high school student in the above described territory, a present total of $1,800.00.

"A number of the petitioners have land outside said territory which would still be subject to taxation by the Hinsdale High School District.

"4. There are six (6) high school students from the above described territory, all of whom go to the Saco High School.

"5. All of the elementary students from the above territory go to Saco elementary school.

"6. The telephone exchange for the above described territory is Saco.

"7. Mail service for the above described territory is from Saco.

"8. School bus service is now provided all students from said territory to Saco.

"The average travel distance for students from said territory to Saco is six (6) miles.

"The average distance to Hinsdale would be twelve (12) miles, and would cost Hinsdale District approximately $1,000.00 per year in additional bussing costs.

"Travel expense for the above students and their parents to Hinsdale for extra curricular school activities would approximately double those for Saco, estimated by one parent to be an additional $75.00 per year.

"9. Saco is the trading center for all parents and children from said territory.

"10. While taxpayers for the above described lands pay their proportionate share of taxes for Hinsdale High School District,

        (a) they receive no benefit from its operation;

        (b)  they are deprived of all vote for Trustees;

        (c)  they have no voice nor vote in its operation.

"11. If said territory is established as a part of the Saco High School District, petitioners and other residents of the above described territory would;

        (a)  have the right to vote for its Trustees;

        (b)  have representation in the Saco High School Board;

        (c)  in all events, would have voice and vote in Saco operations.

"12. At the present, petitioners are unable to vote for the Trustees in either the Hinsdale or Saco districts, tho supporting both district school systems by their taxes.

"13. If the students within the described territory attended Hinsdale High School, bus service by Hinsdale would be in excess of the one hour trip limitation.

"Present bus service from Saco is well within the one hour limitation.

"14. Winter bus service is often hazardous.

"Bus mileage from Hinsdale being double that of Saco, would increase the risks to students from the described area if attending school in Hinsdale."

At the hearing on the petition, the trustees and some of the residents of the other territory of the Hinsdale High School District appeared in opposition. The Valley County Superintendent found that the reasons given by petitioners were not sufficient to grant the change and denied the petition. He also found the increased burden to the taxpayers of the remainder of the Hinsdale District would be detrimental, unfair, and of consequence.

Appeal was made to the Valley County Board of Commissioners and it made findings identical to those of the Superintendent, plus a projection of declining school population within the area proposed for transfer.

Plaintiff then brought a writ of mandamus to the district court to compel the county officials to agree to the proposed change. The district court, upon consideration of the record before the Valley County Board of Commissioners, affirmed the Board and dismissed the writ. From that decision, plaintiff brings this appeal.

Although appellant lists three issues for review in his brief, we find they can be combined into two issues: (1) In denying the petition to transfer territory from the Hinsdale School District in Valley County to the Saco District in Phillips County, did the Valley County Board of Commissioners abuse its discretion? (2) Was the district court correct in dismissing and discharging the Alternative Writ of Mandamus?

- 4 -

As to issue (1) and the real basis of this appeal--was it an abuse of discretion by the county officials? In the petition fourteen points were listed in support of the proposed move. We shall briefly deal with those points to determine if the Valley County officials abused their discretion.

Points 1 through 4 state jurisdictional matters. These four points are not reasons or grounds for the transfer of the territory; they are requirements which must be met before the petition can be considered.

Appellant argues in his brief regarding point 5 that the tuition statutes sections 75-6313, 75-6314, and 75-6316, R.C.M. 1947, provide reasons for changing school district boundaries or transferring territory from one school district to another. He contends point 5 is controlled by section 75-6313, R.C.M. 1947, and is therefore authority to grant the change. But, we are not concerned here with the payment of elementary tuition, which is the subject of section 75-6313. We are concerned with the transfer of territory from one high school district to another, across county lines. Appellant's argument is not applicable to the facts of the instant case.

Appellant next argues that points 6 through 9 are factors recognized under section 75-6314, R.C.M. 1947, another elementary tuition statute, and that the county superintendent was incorrect in not considering these items as factors requiring the transfer of the territory. Of the four points 6 through 9, only two points 8 and 9 are specifically listed in section 75-6314. Points 6 and 7 concerning the telephone exchange and mail service are not listed in section 75-6314. As to points 8 and 9 which are listed in the statute, we note appellant is again relying on an elementary school tuition statute as a reason for transferring territory from one high school district to another. We do not find that the Valley County officials abused their discretion in not following a statute which is not applicable.

- 5 -

Appellant also relies on section 75-6521, R.C.M. 1947. That statute deals with school district boundary changes within a county and has nothing to do with the formation of a joint high school district.

Points 10, 11 and 12 of the petition, listed as reasons for transferring the territory by appellant, relate to voting rights of the petitioners. Appellant cites Box v. Duncan, 98 Mont. 216, 223, 38 P.2d 986, as authority. Box had to do with the consolidation of two high schools within the same county; the consolidation having been ordered by the county commissioners without a hearing. This Court held that the action was void because the consolidation took place at a time during the year when such action on the part of the commissioners was prohibited by statute. It is true that in Box this Court said the situation there was one which would constitute a rather extreme instance of taxation without representation; but the Court went on immediately to quality that by saying:

> "We do not assume to say, for the purposes of this opinion, that the results we have mentioned have any controlling effect in the decision of this appeal."

We do not then consider the language cited by appellant as controlling. In any event, the situation in Box is not that of the instant case.

In the instant case the residents of the Beaverton area do have the right to vote upon special levies in the Hinsdale High School District. Although it is true they have no vote for trustees, that came about by the action of the Beaverton area taxpayers when they petitioned their elementary district out of Valley County and into Phillips County. Here, we do not find any form of taxation without representation and there was no abuse of discretion on the part of the Valley county officials.

Point 13 of the petition deals with students traveling in excess of one hour on the bus in order to get to school. Appellant relies on section 75-7008, R.C.M. 1947, which again deals with elementary students and not high school students as to bus riding time limitations. We note that section 75-7008 provides the

condition can be waived by the parent or guardian. But, since the statute deals with elementary students, it is not pertinent here.

Point 14 of the petition has to do with road conditions. Again, appellant has used elementary tuition statutes as authority. Appellant argues that reasons for paying tuition constitute reasons for changing school district boundaries or transferring territory from one school district to another. Notwithstanding appellant's argument, it was clear from the evidence that Valley County school officials are concerned about the safety of the children and do all in their power to protect them. All this evidence was presented to the county superintendent, the county commissioners and the district court. They made their decisions that there was no reason to change the boundary based on the question of danger to the children. We find nothing in the evidence which indicates the officials abused their discretion in making that decision.

We have reviewed the petition and the order denying that petition. As stated heretofore our review goes to the question of whether the Valley County officials abused their discretion. We find nothing in the record which would indicate any abuse of discretion.

The second issue on appeal concerns whether the district court was correct in dismissing and discharging the Alternative Writ of Mandamus. The district court, in effect, sustained the action of the Valley County officials by dismissing the writ. This is not a case where the Valley County officials were to perform a ministerial duty. Rather, the duty was to exercise discretion. The function of the district court was to determine whether or not the Valley County officials manifestly abused that discretion.

The general rule and the qualification of the general rule with respect to mandamus actions was clearly set forth by this Court in Paradise Rainbow v. Fish & Game Comm'n, 148 Mont. 412,

417, 421 P.2d 717:

> "As a general rule mandamus is available only to compel performance of a clear legal duty not involving discretion. McCarten v. Sanderson, 111 Mont. 407, 109 P.2d 1108, 132 A.L.R. 1229. 'But even where discretion is involved, if there has been such an abuse as to amount to no exercise of discretion at all, mandamus will lie to compel the proper exercise of the powers granted.' Skaggs Drug Center v. Mont. Liquor Control Board, 146 Mont. 115, 124, 404 P.2d 511, 516. This, court has indicated that arbitrary or capricious action by an administrative board is an abuse of discretion. State ex rel. Sanders v. Hill (P.E.R.S.), 141 Mont. 558, 381 P.2d 475."

In Erie v. State Hwy. Comm'n, 154 Mont. 150, 153, 461 P.2d 207, this Court held:

> "The rule simply put is that a board may be enjoined from acting outside the scope of its authority and such board may be compelled to perform an act it is legally bound to perform; but neither of these extraordinary remedies will lie to control the discretion of a board unless it has been clearly shown that the board has manifestly abused such discretion."

It is clear that the remedy sought in the instant case will lie only when it is shown that there has been a manifest abuse of discretion. We have examined that question and find no such abuse. Therefore, the district court was correct in denying the Alternative Writ of Mandamus.

The decision of the district court is affirmed.

_Wesley Castles_
Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_
Associate Justices.

- 8 -